## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| CALVIN ALPHONSE LEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **2:07-CV-973-MEF** |
| PAUL WHALEY, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## SPECIAL REPORT

COME NOW the Defendants, Kathy Holt, Carolyn Golson, Debra Martin, Levan Thomas, Horace Burton, Janet Hicks, Harold McCray, Kenneth Lacey, and John Cummins, by and through the Attorney General for the State of Alabama, the Honorable Troy King, and in accordance with this Honorable Court's December 5, 2007 Order (Doc. 15), offer the following special report:

## PARTIES[1]

1.      The Plaintiff, Calvin Alphonse Lee, is a former Alabama Department of Corrections ("ADOC") inmate currently residing at 7216 8th Street Mobile, Alabama 36608.

2.      Defendant Kathy Holt is employed by ADOC as the Director of Central Records.

---

[1] Former Director of Classification Paul Whaley has been named as a defendant in the style of this case, but no allegations against him appear in the body of Documents 1, 12 or 13. Mr. Whaley has retired from state service and has not been properly served as of the date of this filing.  If Mr. Whaley is served and requests representation, the undersigned counsel will represent him.

3.    Defendant Carolyn Golson is employed by ADOC as the Director of Classification.

4.    Defendant Debra Martin is employed by ADOC as the Classification Supervisor at the Frank Lee Youth Center ("FLYC").

5.    Defendant Levan Thomas is employed by ADOC as a Warden II at FLYC.

6.    Defendant Horace Burton is employed by ADOC as a Correctional Captain at FLYC.

7.    Defendant Janet Hicks is employed by ADOC as a Correctional Lieutenant at FYLC.

8.    Defendant Harold McCray is employed by ADOC as a Correctional Lieutenant at FLYC.

9.    Defendant Kenneth Lacey is employed by ADOC as a Correctional Lieutenant at FLYC.

10.    Defendant John Cummins is employed by ADOC as a Warden at Kilby Correctional Facility ("KCF").


## EXHIBITS

Exhibit 1 – Affidavit of Carolyn Golson

Exhibit 2 – Affidavit of Harold McCray

Exhibit 3 – Affidavit of Debra Kay Martin

Exhibit 4 – Affidavit of Levan Thomas

Exhibit 5 – Affidavit of Horace Burton, Jr.

Exhibit 6 – Affidavit of Kenneth Lacey

Exhibit 7 – Affidavit of Janet Hicks

Exhibit 8 – Plaintiff's complaint (Doc. 1) with page numbers added

Exhibit 9 – Affidavit of Kathy Holt

## **PLAINTIFF'S CLAIMS**

The Plaintiff's complaint consists of Court Documents 1, 12, and 13.  Document 1 lacks pagination but for the Court's convenience, a copy is attached as Exhibit 8 with page numbers added by the undersigned.  Documents 12 and 13 are paginated when copied from the PACER website and will be referred to accordingly.

The Plaintiff rambles for over twenty pages in the three documents and the undersigned has done his best to decipher Plaintiff's allegations.

In Document 1, Plaintiff initially complains that Defendant Carolyn Golson, the Assistant Director of Classification (now Acting Director) of ADOC improperly placed him in "Restrictive Placement". (Doc. 1, Pg. 6)  Plaintiff alleges Defendant Golson erroneously emphasized the following when he appealed his placement in restrictive custody:

> Under no circumstances should Calvin A. Lee [Plaintiff] be assigned South of Montgomery [Restrictive Comments]   Calvin A. Lee is extremely violent in female relationships.  Last conduct has been good. But is a program risk for work release placement although he has been there before [quote] Plaintiff's job assignment should not permit contact with/ females in free society. (Sic)

(Doc. 1, Pg. 7)

Plaintiff alleges Defendant Carolyn Golson improperly had him removed from Loxley Work Release Center. (Doc. 1, Pg. 7)  Most of Plaintiff's complaints concerning his custody classification appear to be directed at Defendant Carolyn Golson, except in Document 1, Page 8, wherein he claims that Debra Martin has for seventeen months

refused to make any custody changes and on Page 9, wherein he claims Defendant Martin is not doing her job effectively resulting in discrimination. Plaintiff claims Defendant Golson's actions are discriminatory, conspiratorial, and based on false information. (Doc. 1, Pg. 7)

Because most of Plaintiff's complaint takes issue with the procedure used by ADOC personnel to determine Plaintiff's placement and security level, it appears he is alleging he has been denied due process concerning his classification status.

Plaintiff alleges he is in prison for Criminal Mischief I, and that: "Being restricted from around females in the institution. The purpose for this I don't understand, sure I had a few domestic disputes. And any victim that I have every harmed. We now have a great friendship…" (Sic) (Doc. 1, Pg. 8) Plaintiff alleges that other inmates with more heinous history are placed in lesser restrictive custody than he, and thus, he is denied equal protection. (Doc 1, Pg. 9)

When Plaintiff composed his original complaint (Doc. 1), he was incarcerated at the Frank Lee Youth Center and makes the following allegations in regards to the conditions of his confinement at that facility:

1.    He was exposed to excessive second hand smoke;

2.    Trained medical personnel are not on the premises twenty-four hours a day and in one instance, it took at least fifteen minutes or more to receive emergency services (Note that Plaintiff does not allege that this incident concerned him);

3.    There is a lack of potable water;

4.    Noxious fumes arise from the sewage lines;

5.      The ventilation is inadequate; and

6.      There is no adequate systematic mental health screening.

(Doc. 1, Pg. 11)

Plaintiff's filing of December 4, 2007 (Doc. 12) shows he was at that time incarcerated at Kilby Correctional Facility. Plaintiff was released from prison on January 24, 2008.

The gist of Document 12 (which is untitled) is that Warden Levan Thomas, FLYC, and his commanding officers conspired and retaliated against him for filing previous lawsuits by filing a false disciplinary for inciting a riot and then transferred him to a higher custody. (Doc. 12, Pg. 4) The alleged conspirators are Warden Thomas, Lt. Janet Hicks, Lt. Harold McCray, and Lt. Kenneth Lacey. Inmate Lee further alleges his disciplinary hearing denied him due process and was discriminatory. (Doc. 12, Pg. 4-5)

Plaintiff again in Document 12 reiterates his complaint of being exposed to second hand smoke at the FLYC and alleges he was unfairly treated because of a 2005 ADOC order that required those convicted of murder to be removed from Community Custody and Work Release and be returned to State property.

Inmate Lee alleges because he is not a murderer and his custody status has been restricted and that he is being discriminated against.

There appear to be no new allegations in Plaintiff's Amendment to the Complaint (Doc. 13), other than his mentioning Defendant Warden John Cummins at Kilby Correctional Facility. The amended complaint simply states the Plaintiff was transferred to another institution under the control of Warden Cummins. (Doc. 13, Pg. 2, Line 5) No other mention is made of Warden Cummins.

In summary, Plaintiff is alleging that:

1.      He has a due process interest in his classification;

2.      He has been denied equal protection because other inmates with more heinous criminal histories have a more desirable classification;

3.      The conditions of his confinement constitute cruel and unusual punishment;

4.      He was denied due process when found guilty of a disciplinary for his act of inciting a riot on November 16, 2007; and

5.      He has been subjected to discrimination, retaliation, and a conspiracy.


**Requested Relief**

Plaintiff seeks to have this Court institute a federal investigation by the Department of Justice.  He seeks injunctive relief directing ADOC to assign him to a particular prison, preventing ADOC from retaliating against him for filing this complaint, and relief from the alleged cruel and unusual punishment of his confinement.  He also requests monetary and compensatory damages.


**DEFENDANTS' RESPONSE**

1.      The Defendants deny that they violated Plaintiff's constitutional rights.

2.      The Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.

3.      The Plaintiff has failed to state a claim upon which relief may be granted.

4.     The Defendants are immune from suit under the Eleventh Amendment to the United States Constitution.

5.     The Defendants are immune from suit due to qualified immunity.

6.     Plaintiff's allegations as to his conditions of confinement are moot.

## STATEMENT OF FACTS

On May 3, 2006, Defendant Carolyn Golson, an Assistant Classification Specialist/Supervisor, performed routine classification duties reviewing an appeal of the denial of a work release recommendation of Plaintiff Calvin Alphonse Lee. (Ex. 1, Pg. 1) Plaintiff had been recommended for placement at Mobile Work Release in minimum custody. (Ex. 1, Pg. 4)   The Central Review Board had denied such a recommendation in February, 2006. ( Ex. 1, Pg. 4)

Defendant Golson's review of Plaintiff's Presentence Investigations and Delinquency reports revealed Plaintiff has a history of violence towards women.   On February 26, 1988, Plaintiff broke into his ex-girlfriend's, Gale Moore's, residence and vandalized the premises, including destroying two television sets. (Ex. 1, Pg. 5)  On May 28, 1988, Plaintiff again visited the residence of Gail Moore, proceeded to argue with her, and then stabbed her in the chest with a hunting knife. (Ex. 1, Pg. 6)  On June 28, 1996, Plaintiff broke into another ex-girlfriend's car, Roshanan Sellers, shattered the windshield, soaked it with gasoline, and torched it.  (Ex. 1, Pg. 11)  On September 2, 2004, Plaintiff visited the residence of Ernestine Lee (his wife), threatened to kill her and locked her out of her house. (Ex. 1, Pg. 12)  On September 3, 2004, Plaintiff again visited the residence of his wife, proceeded to argue with her, and threatened to kill her. (Ex. 1,

Pg. 12)  On June 3, 2004, Plaintiff once again visited the residence of Ms. Lee and beat her in the head with a saucer cup causing bruises and lacerations.  He also beat her in the chest and dragged her across the room by her hair. (Ex. 1, Pg. 12)

Upon reviewing Plaintiff's history, Defendant Golson in her official capacity as Assistant Classification Director wrote on Plaintiff's Classification Appeal Form:

> Extremely violent in female relationships. Inst. conduct has been good –
> Program risk for work release placement although he has been there
> before – Job assignment should not permit contact with females in free
> society.
> Under no circumstances should he be assigned south of Montgomery.

When Plaintiff's classification was reviewed, he was at Kilby Correctional Facility in medium custody at a level IV security level. (Ex. 1, Pg. 1)  Contrary to Plaintiff's allegations, he was not in a minimum camp when his appeal was reviewed, but his appeal was granted on May 3, 2006 and he was granted a lower level placement in a minimum camp. (Ex. 1, Pg. 1)

When Plaintiff was informed of his appeal results, he was located at Loxley Work Release Center.  Plaintiff was relocated such that he was not south of Montgomery. (Ex. 1, Pg. 2)

On November 16, 2007, Lt. Janet Hicks was shift commander at FLYC. (Ex. 7, Pg. 4).  Lt. Hicks instructed first shift officers to direct the inmates out into the exercise yard for the cleaning of the center. (Ex. 7, Pg. 4)  Several inmates complained that they did not have to go outside.  Lt. Hicks informed the inmates that if they did not have a job to attend, then they had to go outside and they could not sleep late. (Ex. 7, Pg. 4)  Per orders of Capt. Horace Burton, the inmates were brought inside and at 8:30 am.  Warden Levan Thomas telephoned Lt. Hicks about inmate Calvin Lee.  Lt. Hicks informed

Warden Thomas that she had no knowledge of Lee's claim of being run out of the dorm while he was wet and, if she had known, she would have allowed him the opportunity to put on dry clothes. She further informed Warden Thomas that when she ordered inmate Lee out to the exercise yard, he was seated at a table in the back of Dorm A reading a newspaper. Lt. Hicks further stated Warden Thomas that she had never had a problem with inmate Lee and he was a good worker. (Ex. 7, Pg. 5)

A short time later, a kitchen steward asked Lt. Hicks if she was going to write a disciplinary on inmate Lee. Upon questioning the steward, she learned that inmate Lee had tried to get the FLYC inmates to refuse to go to the exercise yard, had called Lt. Hicks a name, and encouraged the other inmates to go to the Warden to complain about her. (Ex. 7, Pg. 5) Lt. Hicks encouraged the steward to write up Plaintiff, but the steward replied that Lee was one of his best workers.

On November 17, 2007, Lt. Hicks reported to work and learned that Plaintiff had been going dorm to dorm seeking inmate signatures to complain about her. Lt. Hicks reported inmate/Plaintiff Lee's actions to Warden Thomas who advised her to initiate a disciplinary action against Lee for his actions of November 16, 2007 for violation of Rule 53 - Inciting a Riot. Plaintiff was found guilty on November 19, 2007, by hearing officer Matthew Parrish and was sentenced to thirty (30) days loss of store, visitation, and telephone privileges and was recommended for classification review. (Ex. 7, Pg. 5)

## **ARGUMENT**

### **SUMMARY JUDGMENT STANDARD**

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark & Clark, Inc.,* 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986);  *Anderson v. Liberty Lobby, Inc.,*  477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of facts become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).  As the Eleveneth Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

**I. Plaintiff's claims that his prison classification and assignment violates the procedural requirements of the Due Process Clause of the Fourteenth Amendment are due to fail because the Plaintiff does not possess a liberty interest in being placed in certain areas within a prison or a prison system.**

Due process is required when the State deprives a prisoner of a life, liberty, or property interest. *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999). To invoke the protections of the Due Process Clause, an inmate must possess a liberty interest that is protected by the United States Constitution or in a state law or regulation. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). In order for the State to confer a liberty interest, (1) the language of the state statute or regulation must restrict the prison official's discretion and (2) the interest must "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidence of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Austin v. Hopper*, 15 F.Supp.2d 1210, 1267 (M.D.Ala. 1998).

**II. Plaintiff has no liberty interest in which facility or where in the facility he is housed.**

Plaintiff has failed to state a claim because he has suffered no constitutionally significant harm, as he has no liberty interest in his prison assignment. The Due Process Clause only protects restraints that impose significant and atypical hardships on the inmate in relation to ordinary prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that inmates had no liberty interest in being free from disciplinary segregation). It has been widely held that prisoners have no liberty interest in their classification status. *Meachum v. Fano*, 427 U.S. 215 (1976) (holding there is no liberty interest in being free from being transferred to a less agreeable prison); *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (affirming that two months' confinement to administrative

segregation was not a deprivation of constitutionally protected liberty interest); *Moody v. Daggett*, 429 U.S. 78, 88 (1976) (noting that federal inmates have no liberty interest in eligibility for rehabilitative programs); *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940, 942 (11th Cir.) *cert. denied*, 459 U.S. 1043 (1982) (holding prisoners do not state a due process claim by asserting that erroneous information was used in their parole decisions); *Johnson v. State*, 797 So.2d 1113, 1115 (Ala. Civ. App. 2001).  In this case, Plaintiff seeks a liberty interest in residing in a different location (FLYC) and seeks a less restrictive classification.  A transfer to another institution or a change in classification is not a significant and atypical hardship in relation to the ordinary incidents of prison life and thus, the Defendants are entitled to summary judgment.

The decision as to Plaintiff's assignment to a different facility was proper in any event, and it is entitled to judicial deference.  As the Supreme Court has stated, federal courts "ought to afford appropriate deference and flexibility to state officials trying to manage a volatile (prison) environment. (Citations omitted.)  Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims since *Hewitt*."  *Sandin* at 482-483.


**III. The Plaintiff has not been denied equal protection because his conviction of a less severe crime is not a suspect class and his custody classification is related to a legitimate state interest.**

Inmate Lee alleges that the state's action of placing him under restrictive custody when he is only convicted of Criminal Mischief I is a violation of the equal protection clause, because those convicted of more severe crimes are in less restrictive custody.

(Doc. 1, Pg. 8, 9)   In *Cleburne v. Cleburne Living Center, Inc.* 473 US 432 (1985), the Court held:

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982)… The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. (citations omitted)   When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, (citations omitted) and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.

> The general rule gives way, however, when a statute classifies by race, alienage, or national origin. These factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy - a view that those in the burdened class are not as worthy or deserving as others. For these reasons and because such discrimination is unlikely to be soon rectified by legislative means, these laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. (citations omitted)

Plaintiff's complaint is not against state legislation but concerns state action and how his custody status was determined.  Contrary to Plaintiff's assertion, it is not only his criminal status (what crime of which he was convicted) but myriad with other factors, including his behavior in and out of prison, are considered to determine his custody status.

Plaintiff can not show the Court that being convicted of a lesser crime as opposed to a more severe crime renders him a member of a suspect class.  Thus, Plaintiff's classification in restricted status is rationally related to a legitimate state interest of protecting the public including those prisoners in the lesser restricted classification than

Plaintiff. Plaintiff's equal protection claim wholly fails to state a claim upon which relief can be granted. See in Accord; *US v. Holmes 838* F.2d 1175 (11th Cir. 1988), when a statute does not discriminate on racial grounds or against a suspect class, Congress' judgment will be sustained absent some persuasive evidence that Congress has no reasonable basis for drawing the line it did.

## IV. Allegations that Plaintiff's conditions of confinement are unconstitutional are moot.

Plaintiff alleges that his conditions of confinement at FLYC violate the Eighth Amendment's prohibition against cruel and unusual punishment. Since making this allegation, Plaintiff has been transferred to KCF and released from prison to the free world.

Plaintiff seeks injunctive relief such that the Court orders his transfer to another facility. This issue is now moot and this Court lacks jurisdiction on this issue. Magistrate Bert Milling of the Southern District of Alabama recently issued a written opinion which is quoted at length as follows:

> Every federal court has the duty to examine its jurisdiction and to dismiss an action where jurisdiction is lacking. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 73, 117 S.Ct. 1055, 1071 (1997); *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 785 (1936); *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001); *Barnett v. Bailey*, 956 F.2d 1036, 1039 (11th Cir. 1992). "Article III of the Constitution limits the jurisdiction of the federal courts to the adjudication of certain 'Cases' and 'Controversies.' U.S. CONST. ART. III, 2. The doctrine of mootness is derived from this limitation because an action that is moot cannot be characterized as an active case or controversy." *Adler v. Duval County School Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). "Article III requires that a plaintiff's claim be live not just when he first brings suit, but throughout the litigation." *Tucker v. Phyfer*, 819 F.2d 1030, 1034 (11th Cir. 1987). Because mootness is

jurisdictional, dismissal is required when an action is moot, as a decision in a moot action would be an impermissible advisory opinion. *Al Najjar*, 273 F.3d at 1336.

"Equitable relief is a prospective remedy, intended to prevent future injuries." *Adler*, 112 F.3d at 1477. For that reason, "[w]hen the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." *Id.*; *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("Logically, 'a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past.'" (citation omitted)). "Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects." *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

In regard to declaratory relief, mootness is determined by the facts of the action. *Golden v. Zwicker*, 394 U.S. 103, 108, 89 S.Ct. 956, 959 (1969). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 108, 89 S.Ct. at 959-60.

In the context of a § 1983 action filed by a prisoner, such as this, the law is settled that a prayer for declaratory or injunctive relief becomes moot upon the transfer or release of that prisoner from the facility where his cause of action arose. *See, e.g., Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir.) ("[A]n inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred."), *cert. denied*, 488 U.S. 1046 (1989); *Wahl*, 773 F.2d at 1173 ("[A]n inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.")

In *Spears, supra*, an Alabama prison inmate filed a § 1983 complaint for declaratory and injunctive relief alleging that West Jefferson's administrative segregation's conditions of confinement were less desirable than other institutions' segregation units. After he filed the complaint, the inmate was transferred from West Jefferson to another institution that had better facilities. On account of his transfer, the inmate's claims for injunctive and declaratory relief were

found to be moot and subject to dismissal. *Spears*, 846 F.2d at 1328.

In the action at hand, Plaintiff's return address on his Motion for Class Certification and the Appointment of Class Counsel (Doc. 45) and his subsequent filings (Docs. 46, 48, 50, 52, 54, 55, 56) reflect that he has been transferred from Fountain to Easterling. There is no indication that Plaintiff will be returned to Fountain, much less be returned in the immediate future. "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by an continuing, present injury or real and immediate threat of repeated injury." *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985). And there is absent in this action "any continuing, present injury or real and immediate threat of repeated injury" to Plaintiff. *See Id.* (finding that a transfer of the plaintiff back to the Coffee County Jail if he was again incarcerated at a minimum security facility and charged with a disciplinary infraction was too speculative to satisfy the required injury element). Therefore, the undersigned finds that this action is moot.

**V. Plaintiff's allegations of cruel and unusual punishment under the Eighth Amendment are due to be dismissed because Plaintiff fails to establish any unconstitutional conditions that need to be remedied.**

Although the Eighth Amendment prohibits "cruel and unusual punishment" of inmates, it does not require that prisons be comfortable. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). A valid Eighth Amendment claim has two components: (1) an objective component which requires that challenged conditions be "sufficiently serious;" and (2) a subjective component which requires that prison officials exhibit "deliberate indifference" to prisoner health or safety. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 302-03 (1991)); *Jordan v. Doe*, 38 F.3d 1559, 1564 (11th Cir. 1994); *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994).

The Supreme Court has held that deliberate indifference describes a state of mind more blameworthy than negligence. *Farmer*, 511 U.S. at 834. "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

When evaluating prison conditions, courts should keep in mind that a prison population is comprised of a "large, confined population of convicted felons, not a nursery school." *Battle v. Anderson*, 788 F.2d 1421, 1426 (10th Cir. 1986).

In the Eleventh Circuit, to establish an Eighth Amendment violation of cruel and unusual punishment, a plaintiff must show: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

> 1.    **The Plaintiff has failed to satisfy the objective component required for claims regarding alleged unconstitutional conditions of confinement.**

"The objective component 'embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ,"' 'but must be balanced against competing penological goals.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579(8th Cir. 1968).  Although several conditions of confinement in combination may also establish an Eighth Amendment violation, to be actionable they must have "a mutually enforcing effect that produces the depravation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501

U.S. 294, 304 (1991).  "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  *Id*. at 305.

The Eighth Amendment "does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349 — and permits prison conditions that are "restrictive and even harsh," *Farmer v. Brennan*, 511 U.S. at 833 (quoting *Rhodes*, 452 U.S. at 347)  "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (excessive force against prisoner may be cruel and unusual if it inflicts wanton and unnecessary pain though no serious injury) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (double-bunking of inmates in single-occupancy cells not cruel and unusual)). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). This proposition "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (cruel and unusual to require denationalization of certain wartime deserters). "Today the Eighth Amendment prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain,' or are grossly disproportionate to the severity of the crime." *Rhodes*, 452 U.S. at 346 (citations omitted).

Plaintiff in the instant action fails to state a cause of action upon which relief can be granted because he fails to allege that he has been deprived of a single human need.

## VI. Defendant Kathy Holt can not be held liable under the theory of respondeat superior.

Plaintiff names the former Director of Classification Paul Whaley (who has not been served with process) and Kathy Holt in the style of this action, but makes no specific allegations against them.  Presumably, Plaintiff's claim against Defendant Holt and non-defendant Paul Whaley is an attempt to hold them responsible through the concept of respondeat superior which is not available to a plaintiff under § 1983.  *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  Absent some allegation that Defendant Holt and non-defendant Paul Whaley knew of, sanctioned, participated in, or were otherwise "affirmatively linked" to the acts complained of, the complaint is insufficient to state a cause of action under 42 U.S.C. § 1983.  *See Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495 (11th Cir. 1985) *cert. denied*.  476 U.S. 1115 (1986).

**VII. Plaintiff has failed to state a claim of retaliation under 42 U.S.C. § 1983.**

Plaintiff alleges that Defendants Hicks, Burton, McCray, Lacey, and Thomas retaliated against him by Lt. Hicks writing the citation for inciting a riot because Plaintiff had filed several lawsuits (Doc. 12, Pg. 4).

The Plaintiff has failed to state a claim of retaliation under 42 U.S.C. § 1983.  "Claims alleging retaliation must be factual and mere conclusory allegations of unconstitutional retaliation will not suffice."  *Adams v. James*, 797 F. Supp. 940, 948 (M.D. Fla. 1992) (citing *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990)).  The Eleventh Circuit has routinely applied the analysis enunciated by the Supreme Court in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) to various kinds of retaliation claims brought under 42 U.S.C. § 1983.  *See Allen v. Autauga County Bd. of Educ.*, 685 F.2d 1302 (11th Cir. 1982); *Kurtz v. Vickrey*, 855 F.2d 723 (11th Cir. 1988).  In

*Mt. Healthy*, the Court articulated a burden-shifting standard by which it decides retaliation cases. First, the plaintiff must show by a preponderance of the evidence that his protected conduct was a substantial or motivating factor in the defendant's actions against him. If the plaintiff carries that burden, then the burden shifts to the defendant to prove by a preponderance of the evidence that he would have made the same decision even in the absence of the protected conduct. *Mt. Healthy*, 429 U.S. at 287.

In prisoner cases, however, more is required to state a claim under § 1983 than the mere allegation that prison officials retaliated against the inmate for exercising a constitutional right. Federal courts have recognized "that claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). The Seventh Circuit Court of Appeals has provided persuasive guidance in analyzing prisoner retaliation claims brought pursuant to § 1983:

> Not every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment. Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred. *Murphy v. Lane*, 833 F.3d 106, 108-09 (7th Cir. 1987) (holding that the plaintiff's complaint "set forth a chronology of events from which retaliatory animus on the part of the defendants could arguably be inferred" sufficient to overcome a motion to dismiss). *See also Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient"). Barring such a chronology, dismissal may be appropriate in cases alleging retaliatory discipline.

*Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988).

According to the Eleventh Circuit in *Thomas v. Evans*, "The first amendment prohibits state officials from retaliating against prisoners for exercising the right of free speech." *Thomas v. Evans*, 880 F. 2d 1235, 1241 (11th Cir. 1989)(citations omitted). The

Eleventh Circuit also states, "The first amendment … prohibits state officials from denying a prisoner's legal right of access to the courts."  880 F. 2d 1235, 1241 (11th Cir. 1989).  The Plaintiff's complaint appears to conclusorily allege that Lt. Hicks, Lt. Lacey, Lt. McCray, Capt. Burton, and Warden Thomas retaliated against him.  Nevertheless, not only has the Plaintiff completely failed to provide any evidence that his protected conduct was a substantial or motivating factor in the Defendants' action against him, substantial evidence has been submitted showing that the Plaintiff's own misbehavior resulted in the disciplinary action taken against him.  The Plaintiff's retaliation claim must fail because the penalties of being issued a disciplinary were not a result of the Defendants' retaliation against the Plaintiff, but because of the Plaintiff's own infractions.  Lt. Hicks filed the disciplinary against the Plaintiff because Plaintiff was inciting inmates not to follow her lawful order to go out to the exercise yard in violation of ADOC Administrative Regulation 403.

Defendant Hicks would have clearly made the same decisions, even if the Plaintiff had not filed a complaint against her.  Therefore, there is no causal connection between the Plaintiff's lawsuit and Hicks' actions.  It is evident that the adverse action the Defendants took against the Plaintiff was not a form of retaliation against the Plaintiff.  The Plaintiff's own willful and deliberate violation of the prison rules (attempting to incite a riot by encouraging the other inmates to refuse a lawful order to go to the exercise yard) caused the disciplinary to be filed by Lt. Hicks.

**VIII. Plaintiff's claim of conspiracy is due to fail.**

In his complaint, Plaintiff mentions the word "conspiracy".  Plaintiff's allegation of conspiracy is much more vague and conclusory than those dismissed in *Fullman v.*

*Graddick* 739 F2 558 (11th Cir. 1984) and thus, Plaintiff's pleading fails to state a cause of action.

**IX. Plaintiff's due process right was not violated when he was issued a disciplinary for inciting a riot.**

Plaintiff objects because he received a disciplinary for inciting a riot. Plaintiff was charged on November 17, 2007 by Lt. Hicks. When served with a copy on November 19, 2007, Plaintiff refused to sign an acknowledgement of service, but did list desired witnesses and introduced his evidence.

The hearing was conducted in accordance with all constitutional requirements of due process. (Ex. 7, Pg. 6-16) In *Wolff v. McDonnell*, 418 U.S. 539 at 564-566 (1974) the Supreme Court held:

> We hold that written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshall the facts and prepare a defense. At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare…
> We also hold there must be a 'written statement by the fact-finders as to the evidence relied on and reasons' for the disciplinary action. *Morrissey* 408 U.S. at 489…
> We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.

The facts show that ADOC has afforded the Plaintiff upon the imposition of disciplinary penalties all of the due process which the constitution requires.

**X. Defendants are immune from suit.**

Plaintiff's suit is barred under the doctrines of discretionary function and qualified immunity. Qualified immunity protects government officials from civil trials and liability when their conduct "violates no clearly established statutory or constitutional rights of

which a reasonable person would have known." *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting *Lassiter v. Alabama A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). The Defendants are also entitled to discretionary-function immunity, which protects the discretionary acts of state employees from suit unless a plaintiff can show the employee acted maliciously or in bad faith.  *Taylor v. Adams*, 221 F.3d 1254, 1261 (11th Cir. 2000).  As Plaintiff has not shown that the Defendants' acts violated clearly established law, or were done in bad faith, they are immune from suit.

To the extent that the Plaintiff asserts his claims against the Defendants in their official capacities, the claims must fail because the Defendants are entitled to immunity via the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  The Amendment not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizens.  See *Edelman v. Jordan*, 415 U.S. at 663, 94 S. Ct at 1347 and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L.Ed. 842 (1890).  The Defendants were acting within the scope of their official duties in this instance on behalf of the State of Alabama.  The State of Alabama has not waived its immunity or consented to the filing of such a suit.  The Defendants are absolutely immune from suit in this instance.  U.S. Const. amend. 11; Art. I, § 14, ALA. Const. (The State of Alabama shall never be made a defendant in any court of law or equity); see also *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (a claim against a state official in his official capacity is a claim against the state).

## CONCLUSION

There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law.  WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the claims against them.

Respectfully submitted,

TROY KING
Attorney General

/s/ *Jeffery H. Long*
Jeffery H. Long
Assistant Attorney General

ADDRESS OF COUNSEL:
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7555
(334) 242-2433 – fax
jlong@ago.state.al.us

## CERTIFICATE OF SERVICE

I hereby certify that I have, this the 25th day of February, 2008, electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I further certify that I have served a copy of the same upon the Plaintiff by United States Mail, postage prepaid and properly addressed as follows:

Calvin Alphonse Lee
7216 8th Street
Mobile, AL 36608

/s/ *Jeffery H. Long*
Jeffery H. Long
Assistant Attorney General

STATE OF ALABAMA:                    CIVIL ACTION NO. 2:07-CV-973-MEF

MONTGOMERY COUNTY:                  LEE, CALVIN ALPHONSE #152056A


A F F I D A V I T


My name is Carolyn Golson. I am over the age of twenty-one (21). I have been
employed in the Classification Division of the Alabama Department of Corrections for
thirty (30) years. Thirteen (13) of those years I was employed as a Classification
Specialist/Supervisor. I was promoted to the Assistant Classification Director position
April 20, 2002. I am currently the Interim Classification Director.

As part of plaintiff's complaint, he alleges that Respondent initiated a
discriminatory action against him.

While performing routine classification duties on May 3, 2006 an appeal to the
denial of a work release recommendation was reviewed by the Respondent (Exhibit I).
A review of the Plaintiff's file revealed comments by the Classification Coordinator and
Central Review Board members relative to violent acts toward women (Exhibit II).
Further review of the Pre-Sentence Investigations and the Delinquency Reports provided
the basis for the statements made on the Classification Appeal Form by this Respondent
(Exhibits III, IV, V, VI, VII, VIII and IX).

Plaintiff was at the time of the review assigned to Kilby Correctional Center in
Medium Custody and Level IV Security Level. Kilby's Classification Team
recommended work release. The recommendation was denied and Plaintiff appealed the
denial. As previously stated the appeal was reviewed by this respondent and Plaintiff
was granted lower level placement (min camp). Plaintiff inaccurately claims to have
already been at a minimum camp when the appeal was granted. **NOTE:** The
Classification appeal was granted May 3, 2006 and Plaintiff was not transferred to Loxley
Community Work Center until May 12, 2006 (Exhibit X).

When the appeal form was reviewed by the Warden at Loxley, Respondent was
notified that the form specifically indicated that Plaintiff "under no circumstances



Page 2 Lee, Calvin #152056A

should be assigned south of Montgomery." Loxley Community Work Center is south of Montgomery. Arrangements were made to have him transferred from the area. Plaintiff's custody and Security Level was not changed (Exhibit XI).

Based on all information available, Respondent while using professional judgment and experience exercised appropriate actions relative to the Plaintiff's classification (Exhibit XII). To the allegation made by the Plaintiff regarding personal knowledge/interest, Respondent replies that she has no personal knowledge of the complainant nor has the Respondent any personal interest in the complainant's case.

No rights of the Plaintiff have been violated.

Carolyn Golson

STATE OF ALABAMA:

COUNTY OF MONTGOMERY:

SWORN TO AND SUBSCRIBED before me this the _9th_ day of _January_, 2008.

Notary Public

EXHIBIT I



STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
BULLOCK COUNTY CORRECTIONAL FACILITY
P.O. BOX 5107
UNION SPRINGS, AL 36089

## Classification Appeal Form

NAME: _Calvin Alphonse Lee_    AIS# _152056A_    INSTITUTION _Bullock_

DATE: _03 28 2006_

I.    CLEARLY STATE THE DECISION THAT IS BEING APPEALED: _THE DENIAL of_
_PLACEMENT at MOBILE WORK-RELEASE. BECAUSE of CONTINUED D.V. AND ASSAULT-_
_IVE BEHAVIOR_

II.    BRIEFLY AND CLEARLY STATE YOUR REASONS FOR APPEALING: _____

_____ [ SEE ( ATTACHED PAPER'S ] _____

_Cal D Lee_
INMATE SIGNATURE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

III.    COMMENTS OF WARDEN/CLASSIFICATION PERSONNEL: _PR is attached—_
_it was Submitted at Kilby_

_____

_Willie Davenport  3/28/06_          _Megan L. Sullivan  3-28-06_
WARDEN SIGNATURE/DATE                 CLASSIFICATION SIGNATURE/DATE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

_Under first he 3 should_
_Choose to assign minty_  DO NOT WRITE BELOW THIS LINE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* _No. ALABAMA_ \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL GRANTED: _Min Camp_          DENIED: _____

DATE: _5 13 06_

COMMENTS: _Extremely violent in female relationship_
_Last conduct has been good – Program risk_
_for work release placement although he has been_
_there before – Job assignment should not permit_
_Contact w/ females in free society_

3

Case 2:14-cv-00601-MEF-CSC    Document 43-4    Filed 03/25/2008    Page 4 of 18

EXHIBIT II

ALABAMA DEPARTMENT OF CORRECTIONS - PROGRESS REVIEW FORM - JANUARY 23, 2006
(COU122)

AIS #: 00152056A    SSN: 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    RACE/SEX: B/M    DATE OF BIRTH: 05/16/1956
NAME: LEE, CALVIN ALPHONSE    CUSTODY: MED2    SECURITY LEVEL: 4
INST: KILBY CORRECTIONAL FACILITY    TIME SRVD: 04Y10M29 LAST DISC: 05 19 1999
CRME: CRIMINAL MISCHIEF I    MIN REL DT: 01/24/2008 ACTIVE DET: 0

DISC: FAIL TO OBEY A DIRECT ORDER OF PRL CONS:    05/01/2006 EDUCAT LEV: 12

WL/PGM: _Kitchen_    PRIM OCCUP: JANITOR

RECOMMENDED INSTITUTION: _Mobile WR_    RECOMMENDED CUSTODY: _min_

JUSTIFICATION: AR: _Violent offender serving 15 yrs for Criminal Mischief I (subject broke windshield of Girlfriend's car and set it afire. Prior Felonies: Assault I / Assault II / Burg III / Poss of Stolen Prop Many misdemeanor Arrests for harassing/harassment. Pending Case CC 05-912 (DV II) dismissed (Per attorney at Mobile DC). No Escapes, Sex offenses or detainers._

_Recommend placement at Mobile WR in min. custody (can't employed)_

MAR 6 2006
TAS

CDEN: _1 at DOF_

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED: _____    APP. S/L: _____

CLASSIFICATION SPECIALIST _Barbara Jan_    DATE _1/24/06_    WARDEN OR DESIGNEE _Stephanie Atcherson_ 1/25/06 *

PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.    DATE    CLASSIFICATION COORDINATOR DATE

CENTRAL REVIEW BOARD ACTION _Red Ang. Mgmnt at BCF 9/98_

_Elm/JDDVA Bullock_
APPROVED X DENIED; DIVERTED TO: _RM/DV_ REASONS: _Psychological Evaluation '01 indicates the need for another round of Ang Mgmnt /_
DV. ① is an undue risk to his female friends/partners. Program risk for WR.    _D. Edwards 3/24/06_    _Valid SA score._
CRB MEMBER    DATE

APPROVED X DENIED; DIVERTED TO: _After_ REASONS: _Continued DV and_
_Assaultive Behavior    Bullock    BM/DV    A. Cullen    2-28-06_
CRB MEMBER    DATE

APPROVED ___ DENIED; DIVERTED TO: _____ REASONS: _____
_ELMORE/JDD_    _TAS    Cust 3/14/06_
_After Bullock_
CRB MEMBER    DATE

FINAL DECISION: INST. _BM_ CUSTODY _min_ DATE _2-28-06_    4

DATE INMATE INFORMED: _1/24/06_ INMATE'S SIGNATURE: _Calvin Lee_

Last PR: 1/10/05 - Reclass - RC7med    * Disagree w/ WR placement. Level of violence against
DNA: 5/97    women, threats, intimidation and harassment. Review
Rel pref: Baptist.    for Restricted category.

PRISON OFFENSE

Date of:

Counts (Docket and Case Number):

Mobile County, Circuit Court CC# 88/88-2148

Offense:

Burglary, 1st Degree

Sentence:

6 years Penitentiary

Date of Sentence:

12-13-88

Details of Sentence:

According to the Mobile Police Department Offense Report con-
cerning this case, sometime between the hours of 2:00 P.M. on
February 26, 1988 and 10:30 P.M. on February 27, 1988, Calvin
A. Lee broke into the residence of Gale Moore located at 733B,
Alex Herman Drive in Mobile. Lee effected entry into this res-
idence by breaking out a bedroom window.

While inside this residence Lee vandalized numerous appliances
and totally destroyed two television sets. He then departed
this dwelling with numerous items of clothing.

This police report indicated that the victim was an ex-
girlfriend of the subject and had previously signed a
warrant on this subject for Burglary, 1st Degree.

Serious Physical Injury Barring Parole:

N/A

Subject's Statement:

None Obtained

Case Status of Co-defendant:

N/A

Victim Notification Information:

Gale Moore, 733B Herman Drive, Mobile, Alabama  36610

-2-

<u>Victim Impact:</u>

A Victim Impact Report has been made to the victim in this case.

<u>Location of Offense:</u>

Mobile, Alabama

<u>Court Ordered Restitution:</u>

$2,966.25 in this case.

<u>CASE #2:</u>

<u>County, Court and Case Number:</u>

Mobile County Circuit Court Case #CC88-2324

<u>Offense:</u>

Assault, 2nd Degree

<u>Sentence:</u>

5 years penitentiary concurrent with CC88-2323

<u>Date of Sentence:</u>

12-13-88

<u>Details of Offense:</u>

According to the Mobile Police Department Offense Report
concerning this case, on May 28, 1988, at approximately 5:00
A.M. Calvin A. Lee went to the residence of his ex-girlfriend,
Gale Moore, located at 733B, Herman Drive in Mobile.  While
at this location Lee began arguing with Ms. Moore.  During the
course of this argument Lee stabbed Moore in her right chest
with a hunting knife.

Ms. Moore was transported to a local hospital where she was
treated for her injury and was subsequently released.

Lee was subsequently arrested on August 14, 1988 and was
charged with Assault, First Degree.

<u>Serious Physical Injury Barring Parole:</u>

None.  Ms. Moore's injury was not extremely severe, how-
ever her hospital expenses amounted to $1,866.00, and the
Court ordered Lee to pay this amount of Restitution as part

-3-

6

6

of the Restitution Order in case #CC88-2323.

Defendant's Statement:

None obtained

Case Status of Co-Defendant:

N/A

Victim Notification Information:

See case #one of this report.

Victim Impact:

See case #one of this report

Location of Offense:

Mobile, Alabama

Court Ordered Restitution:

See Case #CC88-2323

## RECORD OF ARRESTS

Prior Arrest Record:

| 4-14-8? | PD, Prichard, AL | Assault, 1st Degree (CC84-48X) | On 11-14-8? sentenced to ? years pen. suspended 2 years probation dis- charged ?. ?? |
| 1-23-88 | PD, Mobile, AL | Burglary, 1st Degree (CC88-2322) | Nolle Prossed on 12-13-88 |

Subsequent Arrest Record:

None

## PERSONAL/SOCIAL HISTORY

Subject:

Calvin Alphonse Lee was born on May 16, 1956 in Mobile, Ala-
bama. His natural parents were listed as Calvin Rory Lee,
father, and Vergie Lee, mother. Subject stated his parents
were never married and that he was raised by his mother in a
low-class urban environment in the Mobile area.

### Marital/Social History:

Subject is single and has never married. He stated he has never fathered any children.

### Health:

Lee reports having fair health and that he has a history of asthma related problems. He does not claim any other history of chronic diseases or mental disorders.

Subject admits to occasional usage of alcoholic beverages, and he denies using any illegal or controlled substances.

### Education:

In 1974 Lee graduated from Vigor High School located in Prichard. Since departing high school he has enrolled in a local technical college, yet he did not obtain a degree of completion.

### Financial Status:

At the time of his arrest in the present offense: Lee was employed as a laborer earning minimum wage. He is basically supported by his mother who is employed as a housekeeper/maid.

He owns no real or personal property and he claims no liabilities.

### Employment History:

Lee claims that he has generally been employed at various blue collar jobs since the age of 16 years, usually as a laborer. He claims to have been employed with Blackmon Oil Company, Buchannon Lumber and Alabama Dredging Company.

### Military Record:

On August 8, 1974, Lee enlisted in the Marine Corps and was Honorably Discharged on August 18, 1976. He has also served in the Alabama Army National Guard.

### Offender's Family:

Father: Calvin Rory Lee died in 1961 of natural causes.

Mother: Vergie Lee, age approximately 59, resides at 1903A, Bishop Avenue, Mobile. She is employed as a housekeeper/maid.

-5-

8.

Children:  Linda Lee Rodgers, age approximately 33, is married to John Rodgers and they reside at an unknown address in the Mobile area.

Alvin Lee, age approximately 27, is reportedly serving active duty with the U.S. Navy.

## EVALUATION OF OFFENDER

### Psychological Reports:

None

### Recreation and Community Activities:

Lee does not claim any membership with any religious organizations.  He has never been associated with any civic, social or labor organization.

He listed no references to be contacted for comment.

### Probation and Parole Officer's Remarks:

Calvin Lee previously served a probation sentence in Mobile County for the offense of Assault 2nd Degree.  During the course of that probation Lee failed to comply with the Orders of Probation, yet the Court did not revoke this probation.

Since the occurrence of the present offenses and prior to his arrest Lee assaulted the victim in this case three additional times.  His bond was subsequently revoked by the Court.

Signed and Dated at Mobile, Alabama, the 9th day of January, 1985.

_____
George W. Jenkins
Alabama Probation and Parole Officer

Reviewed: _____
James R. Lee, Jr.
District Supervisor

GWJ/psm

-6-

9

### ALABAMA BOARD OF PARDONS AND PAROLES

### REPORT OF INVESTIGATION

Type of Investigation __At Time of Sentence__ _____ Date Dictated _____

Name: __Calvin Alphonze Lee__ _____ True Name __Calvin Alphonze Lee__

Alias: __C. Alphonza Lee__

RSA __BM-22__ _____ DOB __1-31-64__ _____ Height and Weight _____ lb.

Complexion __Dark Brown__ _____ Color of Hair _____

Bodily Marks __Tattoo of anchor on left arm__

Driver's License # __Alabama #4721216__ _____ SS# _____

AIS# __152,256__ _____ FBI# __213 239 EA1__ _____ SID# __1071216__

Address __Mobile Simon Avenue__ _____ Phone # _____

__Mobile, Alabama__ _____

_____

County __Mobile__ _____ Case # _____

Offense(s): __Burglary 3rd Degree; Assault 2nd Degree__

Sentence(s) __5 YRS. DPH each case concurrent__

Date of Conviction _____

Date of Arrest _____ Date of Bond _____

Judge __Ferrill D. McRae__ _____

Attorney __Richard Yelverton__ _____ Retained ___ App.

Court Ordered Restitution $ _____

Barred from Parole (Ala. Code 15-22-27.1) Yes _____ No __X__

NOTES:

"Copy mailed to Dept. Of Corrections on 1/13/89."

ENTERED  ORIGINAL

DATE

BPP 203

10



## PRESENT OFFENSE(S)

| **County Court and Case Number:** | Mobile, CC 1996 004044.00 |
|---|---|
| **Offense(s)** | CRIM MISCHIEF 1ST |

| Sentence(s) | Date | Begin Date | Conf Imp | Conf Susp | Prob. | Rest. |
|---|---|---|---|---|---|---|
| CRIM MISCHIEF 1ST : G | 03/04/1997 | 03/04/1997 | Y03 M00 D000 | Y12 M00 D000 | | $ 5080.00 |

**Date of Sentence:**

**Details of Offense:** (1) On August 13, 1996, Calvin Alphonse Lee, was arrested by officers with the Mobile Police Department for Criminal Mischief First Degree. According to the offense report filed by the Mobile Police Department, on June 28, 1996, at approximately 4:47 p.m., the victim's ex-boyfriend, Cavin Alphonse Lee, came to 1052 State Street. The subject broke the front window to the victim's 1985 Silver Mazda 626, poured gas in and on the vehicle and set it on fire. The estimated value of the vehicle was $4,000.00. On July 8, 1996, the victim, Rosharon Sellers, picked up paperwork to complete a warrant on Calvin Alphonse Lee, for Criminal Mischief First Degree. The victim indicated when she picked up paperwork for the warrant, that she saw the subject, Calvin Alphonse Lee, bust the front window of her vehicle, and pour gas in the vehicle. On July 8, 1996, police made contact with witness, Phalisha Smith, who stated that she saw Calvin Alphonse Lee, bust the front window of the victim's vehicle, pour gas in, on and around the viuctim's vehicle and then the subject threw a bottle that had a rag lit on fire at the victim's vehicle, burning it.

**On Probation At Arrest:** No

**On Parole At Arrest:** No

**Serious Physical Injury Barring Parole:** No

**Subject's Statement:** (1) None

**Case Status of Co-defendants:** (1) None

**Location of Offense:** Mobile County Jurisdiction

**Court Ordered Restitution:** $5080

## RECORD OF ARREST(S)

| Date | Agency ORI | Type | Charge | Disposition |
|---|---|---|---|---|
| 04/14/1983 | PD, Prichard, AL | Prior Adult | Assault First Degree (CC84-486) | Other: sentenced 2yrs, susp 2yrs, placed on probation |
| | | | Harassing Communication (86-03- | |



**LEGAL FACTS:**

A Probation Officer's Authorization of Arrest was issued and executed on September 7, 2004.

**DETAILS:**

On September 3, 2004, at approximately 3:55 PM, officers with the Mobile Police Department were dispatched to 706 Fisher Street, in reference to a domestic violence complaint. Upon arrival at the residence, officers met with victim, Ernestine Lee, who advised police that while she was at her residence, her husband, Calvin Alphonse Lee, came over and began arguing with her. The victim further stated that she called police and the subject left the scene, Lee, then started calling her residence saying that he was going to kill her. Lee called the residence several times while the police officers were at the location.

**CHARGE #3**
**NEW OFFENSE—Domestic Violence 3rd Degree/Harrassment (M04-09-391)**

**LEGAL FACTS:**

A Probation Officer's Authorization of Arrest was issued and executed on September 7, 2004.

**DETAILS:**

On September 2, 2004, at approximately 9:50 PM, officers with the Mobile Police Department were dispatched to 2003 Belle Rose Drive, in reference to a domestic violence complaint.

Officers with the Mobile Police Department met with the victim, Ernestine Lee, who advised officers who met her standing in the middle of the road holding a telephone. The victim stated that her husband, Calvin Alphonse Lee, had locked her out of their residence shortly after he threatened to kill her. Officers with the Mobile Police Department, noted that Calvin Alphonse Lee never came out of the residence.

**CHARGE #4**
**NEW OFFENSE—Domestic Violence 3rd Degree (M04-06-0509)**

**LEGAL FACTS:**

Probation Officer's Authorization of Arrest was issued and executed on September 7, 2004.

**DETAILS:**

On June 3, 2004, officers with the Mobile Police Department were dispatched to 957 Dauphin Street, Apt. 3, in reference to a domestic violence complaint. Officers met with victim Ernestine Lee, who reported to officers that her husband, Calvin Alphonse Lee, had become violent towards her when she refused to do what he said. Victim further informed police that Lee, beat her in the head with a saucer cup causing bruises and lacerations. Victim also stated that Lee, hit her in her chest and dragged her across the room by her hair. Lee fled the scene prior to the police arriving at the residence the victim was treated by Mobile Fire and Rescue.

**CHARGE #5**
**NEW OFFENSE—Domestic Violence 3rd Degree (M04-02-2608)**

**LEGAL FACTS:**

Probation Officer's Authorization of Arrest was issued and executed on September 7, 2004.

EXHIBIT VIII

**DETAILS:**

On February 15, 2004, at approximately 7:38 PM, officers with the Mobile Police Department were dispatched to 603 St. Michael Street, in reference to domestic violence complaint.

Upon officers' arrival at the scene, they met with victim Ernestine Reed, who advised police that her live-in boyfriend, Calvin Alphonse Lee had thrown a can of gasoline on her after they had a verbal dispute. The victim stated that Lee, said that he was going to kill her when he returned home. The victim also stated to police that she was in grave fear of her life, as a result victim was taken to the Penelope House for her safety. Lee was not on the scene when police arrived.

**CHARGE #6**
**Failure To Pay Court Ordered Monies**

**LEGAL FACTS:**

Probation Officer's Authorization of Arrest was issued and executed on September 7, 2004.

**DETAILS:**

On March 19, 2003, Calvin Alphonse Lee was instructed on the rules and regulations of probation by Probation Officer Raymond Langley.

Lee was instructed to pay on his court-ordered monies at a rate of $75 per month, on or before the first day of each month, beginning April 2003. As of this writing, Lee has an outstanding balance owed to the courts in the amount of $5,432, Lee has paid $120 towards this account.

**RECOMMENDATION:**

I respectfully request a hearing to determine if continued probation is in the best interest of the State of Alabama.

**Signed and Dated at Mobile, Alabama, this the 12th day of October, 2004.**

M.V.

Reginald Tate
Alabama Probation and Parole Officer

Reviewed by:

Steven F. Green
District Manager

13

EXHIBIT IX

*Probation Revoked 11/1/04*

## STATE OF ALABAMA

## BOARD OF PARDONS AND PAROLES

## OFFICER'S REPORT ON DELINQUENT PROBATIONER

| | | | |
|---|---|---|---|
| Probationary Judge | Ferrill D. McRae | Court | Circuit |
| Probationer | LEE, Calvin Alphonse | Co. No. CC96-4044 | County Mobile |
| Race, Sex & Age | BM  DOB: 5-16-1956 | Date of Conviction | 3-4-1997 |
| Offense | Criminal Mischief I Degree | Date of Probation | 12-24-1999 |
| Sentence | 15 yrs pen split serve 3 yrs | Probation Period | 5 Years |
| Date of Delinquency | October 18, 2001 | Probation Expires | 12-23-2004 |
| Restitution Paid | $UNPAID | Supervision Fee Paid | $CURRENT |

**SUBJECT'S LAST KNOWN ADDRESS:**   Mobile County Metro Jail.

### DELINQUENT CHARGE OR CHARGES

### CHARGE NO. 1

### NEW ARREST – HARASSING COMMUNICATIONS

### LEGAL FACTS:

Subject was arrested by the Mobile Police Department on October 16, 2001 for Harassing Communications.  Subject is presently being held in the Mobile County Metro Jail with a probation hold against subject.

### DETAILS OF OFFENSE:

No offense report was available at this time.  However, after talking to investigating officers, subject reportedly was threatening a girlfriend to include threatening to kill her with a pistol that was later taken by Mobile Police.  Subject also reportedly cut her tires and did other physical damage to her property.

Additional charges are reportedly forthcoming concerning this case.

PB Form 109 (Rev. 5-92)

14

EXHIBIT X

```
                        DISPLAY TRANSFER/LEAVE DATE       ** PRODUCTION **
   02/JAN/2008      16:57:59    CDTLD     11    C-CAROLN    CDTLD01    150
   A I S NUMBER : 00152056A    COMMITMENT NAME : LEE, CALVIN ALPHONSE
SEQ#    DATE    TYPE FRM-INST-DRM  TO-INST-DRM   RECPT-DT    PRLRVK-DT    REL-TYPE
040  12-19-2007   T     017-00       004-00
039  11-19-2007   T     012-00       017-00
038  08-09-2007   T     012-CT       012-00
037  07-20-2007   T     012-AC       012-CT
036  07-16-2007   T     012-00       012-AC
035  12-08-2006   T     012-DP       012-00
034  10-18-2006   T     012-00       012-DP
033  06-14-2006   T     023-00       012-00
032  06-14-2006   T     029-00       023-00
031  06-08-2006   T     027-00       029-00
030  05-12-2006   T     045-MH       027-00
029  03-06-2006   T     008-00       045-MH
028  11-10-2005   T     008-CT       008-00
027  10-27-2005   T     008-00       008-CT
026  06-23-2005   T     008-CT       008-00
025  03-10-2005   T     008-00       008-CT
024  01-24-2005   T     017-00       008-00
023  12-29-2004   T     249-00       017-00
022  03-17-2003   P     057-00       RELEASE    00-00-0000   00-00-0000     23
```

15

## DOC INSTITUTIONAL CODES

| | | | |
|---|---|---|---|
| 000 | Unassigned | 045 | Bullock Corr. Facility |
| 001 | Atmore Work Release | 047 | Staton Alt. Thinking Unit |
| 002 | Fountain Correctional Facility | 048 | Atmore CWC |
| 003 | Holman Prison | 049 | Hamilton Work Release |
| 004 | Draper Correctional Facility | 050 | Central Records Monitor |
| 006 | Tutwiler Prison | 051 | Decatur CWC |
| 008 | Kilby Corr. Facility | 052 | Birmingham CWC |
| 009 | State Cattle Ranch | 053 | L'stone Alt. Thinking Un |
| 010 | Red Eagle Honor Farm | 054 | Camden CWC |
| 012 | Frank Lee Youth Center (SAP) | 055 | Mobile CBF |
| | | 056 | Brookley Work Release |
| 014 | Loxley Work Release | 057 | Decatur Work Release |
| 015 | Birmingham Work Release | 058 | Bullock Mental Health |
| 016 | Hospital | 059 | Elba CWC |
| | | 060 | Hamilton A & I |
| 017 | RCC | 061 | Hamilton CWC |
| 018 | Childersburg Work Release | 063 | West Jefferson Fac. |
| 019 | Mobile CWC | 064 | Boot Camp |
| 021 | Alex City Work Release | 066 | Tutwiler Annex. |
| 024 | Limestone Corr. Facility | 067 | St. Clair Corr. Facility |
| 023 | Montg. Pre-Release | 069 | Elmore Corr. Facility |
| | | 070 | Staton Corr. Facility |
| 027 | Loxley Work Center | | |
| | | 351 | Louisiana Females |
| 029 | J.O.Davis | 352 | Tutwiler Miss. (Males) |
| 030 | Camden Work Release | | |
| 031 | Limestone CWC | | |
| 032 | Elba Work Release | 775 | Tutwiler Infirmary |
| 033 | Montg. Comm Work Center | 777 | Limestone Infirmary |
| | | 993 | Donaldson Death Row. |
| 036 | EMC & Work Release | 995 | Tutwiler Death Row |
| 037 | Bibb Correctional Facility | 999 | Holman Death Row |
| 038 | Childersburg CWC | 354 | Pine Prairie LA (Males) |
| 039 | Alex City CWC | | |
| 040 | W. Donaldson Corr. Fac. | | |
| 041 | Easterling Correctional Center | 356 | JB Evans (Females) |
| | | 358 | West Carroll (Males) |
| 043 | Ventress Corr. Fac. | | |
| 359 | Lovelady House (Birm.) | | |

16

## SOCIAL SERVICE ACTION

NAME _Lee, Calvin_ AIS _152056-A_                    R & S _BM_

INSTITUTION _____ CUSTODY _____

ACTION:  Rescind: _____

Amend: _____

Transfer: From: _Main Loxley CWC_ To: _Main FHC or any MC north of Montg._

Custody: From: _____ To: _____

REASON(S)

The above inmate was transferred to
Loxley CWC on 5-12-06 from Bullock
Con. Center.

The appeal form specifically stated that
he was not to be assigned So. of Montg.
This was due in part to the nature of the
offense.

Inmate should never have been assigned
to Loxley CWC.

DATE: _6-8-06_                    APPROVED: _Jordan_

17

N 258

# CHAPTER 1

## INTRODUCTION / DEFINITIONS / PROCEDURES

This classification manual will be used as the official source document and authority for all Alabama Department of Corrections (ADOC) classification transactions in keeping with Administrative Regulations and all other ADOC policies that have bearing on the classification function. The manual provides guidelines for classification decision-making that allows use of professional judgment and experience of trained Classification Personnel to accomplish the purpose of ADOC classification.

The Director and/or Assistant Director of Classification, with the approval of the Commissioner of Corrections, will be responsible for the source of all amendments to this manual for the annual review and updating of its contents with input from Classification Staff Members in the field.

I.   **PURPOSE**

To provide consistent, efficient, dependable, and constitutionally acceptable decisions concerning offenders during their incarceration with regard to custody, security level, institutional placement, work assignment, education and training, counseling, guidance, therapy, and other special programs in accordance with the needs and resources of the Department and the needs and abilities of the offenders.

II.  **GOALS**

A.   To _orientate_ the inmate to the rules and regulations, program opportunities and classification procedures of the ADOC prison system.

B.   To _assign_ each offender to the least restrictive security level, custody, and institutional placement possible consistent with the safety of the public, ADOC staff, other inmates, self, and the availability of appropriate space.

C.   To _complete_ inmate classification within a maximum of two (2) weeks after admission to the Receiving and Classification Center (R&CC) or Julia Tutwiler Prison for Women.

D.   To _identify_ offenders with technical or other skills which could be used by the ADOC or the need for skill development to cultivate employability on return to the free world.

E.   To _identify_ offenders with treatment and/or educational needs.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Calvin Alphonse Lee, # 152056      )
                                )
        PLAINTIFF,           )
                                  )
          vs.                  )      CIVIL ACTION NO.2:07-CV-973-MEF
                                  )
Paul Whatley, et al.,           )
                                  )
      DEFENDANTS.       )

AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said county and State of

Alabama at large, personally appeared Harold McCray, who being known by me and first duly

sworn, deposes and says on oath as follows:

My name is Harold McCray and I am presently employed as a Correctional Lieutenant

with the Department of Corrections, at Frank Lee Youth Center, Deatsville, Alabama. I am over

twenty-one (21) years of age. By my signature below, I certify that the statements therein are true

to the best of my knowledge.

During the period of this complaint I had no direct or personal dealings with inmate Lee.

I came to Frank Lee Youth Center June 1, 2007. The Center was then and is now, "Smoke Free".

I administered to inmate Lee in accordance with the Rules and Regulations of the Alabama

Department of Corrections.



This, I do hereby certify and affirm to on the 9th day of January, 2008.

_____
Harold McCray, Correctional Lieutenant
Frank Lee Youth Center

STATE OF ALABAMA)
ELMORE COUNTY    )

Sworn to and subscribed before me and given under my hand and official seal this the 9th day of January _____ 2008.

_____
Notary Public

_____7-25-2011_____
My Commission Expires

Ex 2 P 2

IN THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

Calvin A. Lee #152056          )
                               )
          Plaintiff,           )
                               )
          v.                   )          CIVIL ACTION NO. 2:07-CV-973-MEF
                               )
ADOC              , et al.,    )
                               )
          Defendants,          )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said county, personally appeared Debra Kay Martin, who being known by me and first duly sworn, deposes and says on oath as follows:

My name is Debra Kay Martin and I am presently employed as a Classification Specialist with the Department of Corrections, Frank Lee Youth Center, Deatsville, Alabama. I am over twenty-one (21) years of age and I have personal knowledge of the facts set forth herein.

1.  Defendant Martin classifies all inmates assigned to Frank Lee Youth Center in accordance with the Department of Corrections Classification Manual.
2.  Defendant Martin has no knowledge of any discriminatory practices against Calvin Lee.

Debra Kay Martin

STATE OF ALABAMA)
ELMORE COUNTY   )

SWORN AND SUBSCRIBED BEFORE ME AND GIVEN UNDER BY HAND AND OFFICIAL SEAL THIS, THE ___9th___ DAY OF __January__, 2008.

Notary Public

MY COMMISSION EXPIRES __1/9/09__.

DEFENDANT'S EXHIBIT 3

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Calvin Alphonse Lee , #152056     )
                             )
        Plaintiff,          )
                             )
        v.             )     CIVIL ACTION NO. 2:07-CV-973-MEF
                             )
Paul Whatley, el al.,        )
                             )
        Defendants,    )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said county, personally appeared Levan Thomas, who being known by me and first duly sworn, deposes and says on oath as follows:

My name is Levan Thomas and I am presently employed as a Warden II with the Department of Corrections, Frank Lee Work Release Center, Deatsville, Alabama.  I am over twenty-one (21) years of age and I have personal knowledge of the facts set forth herein.

In inmate Lee's complaint, he alleges that I violated his constitutional right by retaliating against him for naming me in several of his lawsuits here at Frank Lee.  To my knowledge, this is the only lawsuit that inmate Lee has named me in. I did advise Lt. Hicks to issue inmate Lee a disciplinary for his action on November 16, 2007. Lt. Hicks was clearing her dormitories for a mandatory yard call for the purpose of clearing the dormitories. Inmate Lee refused to depart the dorm and attempt to encourage other inmates to participate in his defiance against Lt. Hicks. He then made derogatory remarks toward Lt. Hicks in the present of the other inmates in which was reported to my attention. I summoned him to my office in which he was questioned concerning his actions. In a belligerent tone of voice, inmate Lee was un-cooperative and advised me to transfer him. Inmate Lee was issued a disciplinary and transfer for his action.



DEFENDANT'S
EXHIBIT
4

At no time did I conspire with the hearing officer to find inmate Lee guilty of these charges as alleged by inmate Lee. Inmate Lee further alleges that Frank Lee officials do not enforce the smoking policy as established by regulation in which it exposed him to excessive cigarette and drug smoke. The smoking/drug policy is strictly enforced on all three (3) shifts at Frank Lee. This is reflected in the number of citations/disciplinaries issued for those rule violations. Further, at no time has inmate Lee been singled or harmed by me for complaining about inadequate execution of policies and regulations as he alleges. Inmate Lee has never complain to me concerning cigarette/drug smoke or being retaliated by frank Lee staff for making the aforementioned complaints.

This, I do hereby certify and affirm to on the 8th day of January, 2008.

Levan Thomas, Warden II

STATE OF ALABAMA)
ELMORE COUNTY   )

SWORN AND SUBSCRIBED BEFORE ME AND GIVEN UNDER BY HAND AND OFFICIAL SEAL THIS, THE _____ DAY OF _____, 2008.

Notary Public

7-25-2011
My Commission Expires



Ex 4 P2

### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

**ROBERT C. GILL, AIS: 168741**
**Plaintiff**

**2107-EV-01605-IPJ-JEO**

**VS.**

**COMMISSIONER RICHARD ALLEN, ET. AL.,**
**Defendant**

### AFFIDAVIT

**As a defendant, Hillman L. Bailey is responding with an answer to the plaintiff's claims after being served a copy of that complaint.**

**B. Claims**

    **(1) The plaintiff's complaint that the defendants have been deliberately indifferent to his serious medical needs by failing to provide him a smoke-free environment.**

    **(2) The plaintiff complains that the defendants have failed to enforce the non-smoking policy of the Alabama Department of Corrections.**

**Response to Claim:**

    **(1) This defendant denies the plaintiff's claim as it relates to him**

    **(2) This defendant denies the plaintiff's claim as it relates to him (see attached Investigation Report Case No. 07-0435)**

**Sworn Statement of** *Hillman L Bailey* **on this date of** 15 **December 2007**

**Hillman L. Bailey**
**Investigation and Intelligence Division**
**P.O. Box 668**
**Odenville, AL 35120**
**205.467.2820**

**Signature witnessed by** *John H Holtam* **, Robert G. Holtam, Notary, on** 13 **day of** Dec **2007, my Commission expires** 6-29-2010



DEFENDANT'S
EXHIBIT
S

# INVESTIGATIVE REPORT

**ALABAMA DEPARTMENT OF
CORRECTIONS**



**INVESTIGATION & INTELLIGENCE
DIVISION**

Confidential-For Official Use Only

Offense _Complaint_____    Case No. _

Location _Donaldson Correctional Facility_____    County _Jefferson_    Date of Offense _04-13-07___

| Victim(s) | Subject(s) |
|---|---|
|  | Robert Gill W/M AIS 168741<br>Chalmus Wright B/M AIS 132853<br>Moneek Ackles W/M AIS 184176 |

## DETAILS:

On 4-13-07 Inmate Robert Gill W/M AIS 168741 submitted a complaint letter to the Department of Corrections along with several other inmate complaint letters, all are alleging that second-hand cigarette smoke is adversely affecting their health and that administration regulation #009 (prohibiting smoking in certain areas) is not enforced at Donaldson Correctional Facility.

On 5-15-07 this investigator interviewed the complainants, Inmate Robert Gill, Inmate Chalmus Wright and Inmate Moneek Ackles at Donaldson Correctional Facility concerning their second-hand smoking complaints. All of the complainants state that they have respiratory problems, which are aggravated by second-hand smoke from other inmates and officers that smoke inside the prison. The complainants alleged that the administration at Donaldson Correctional Facility is indifferent toward their health complaints concerning second-hand smoke.

This investigator randomly spot-checked Donaldson Correctional Facility and it is obvious that inmates smoke inside the prison but it must be done at times and places surreptitiously. This

| Criminal _____<br>Unfounded _____ | Non-Criminal __x__<br>Pending Investigation _____<br>Cleared by Arrest _____ | Internal _____<br>Closed or Inactive __x__<br>Not Cleared _____ |
|---|---|---|

| Copies of Report to<br>Commissioner _____<br>D/A      _____<br>D/C      _____<br>Other     _____ | Date of Report   _05-29-07_____<br><br>Report Made by  _Investigator H.L. Bailey_<br><br>Report Typed by  _Janet Wilkinson_____ |
|---|---|

investigator did smell cigarette smoke in several areas with the floors littered with cigarette butts inside the prison. The officers are not condoning or allowing inmates to openly smoke inside the facility and do take action when unauthorized smoking is observed.

On 5-15-07 this investigator interviewed Warden Kenneth Jones at Donaldson Correctional Facility concerning the second-hand smoking complaints. Warden Jones states that he adheres to the rules and regulations concerning smoking inside the institution and does not knowingly allow inmates or officers to violate those rules. Warden Jones states that all rules are subject to being violated but that corrective action is taken when the violation is observed by him or his staff.

Conclusion, inmates do purchase and possess cigarettes inside Donaldson Correctional Facility and are allowed to smoke in certain outside areas. If smoking by inmates or officers is detected inside the institution then it would be stopped and corrective measures taken by the ranking officials, alerted to the violation.


H.L. Bailey, Investigator
Alabama Department of Corrections
Investigations and Intelligence Division


HB/jew

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Calvin Alphonse Lee, # 152056    )
                                 )
        PLAINTIFF,                )
                                 )
            vs.                   )        CIVIL ACTION NO.2:07-CV-973-MEF
                                 )
Paul Whatley, et al.,             )
                                 )
        DEFENDANTS.               )

AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said county and State of

Alabama at large, personally appeared Kenneth Lacey, who being known by me and first duly

sworn, deposes and says on oath as follows:

My name is Kenneth Lacey and I am presently employed as a Correctional Lieutenant

with the Department of Corrections, at Frank Lee Youth Center, Deatsville, Alabama. I am over

twenty-one (21) years of age. By my signature below, I certify that the statements therein are true

to the best of my knowledge.

I, Lt. Lacey recall Calvin Lee signing up for sick call, but I have no knowledge of the

nature of his complaint. In reference to inmate Lee's complaint, allowing inmates to smoke

inside is false. Any inmate caught smoking inside of Frank Lee has been dealt with in

accordance with Administrative Regulation 403. I have no other knowledge of inmate Lee's

complaint.



This, I do hereby certify and affirm to on the 8th day of January, 2008.

Kenneth Lacey, Correctional Lieutenant
Frank Lee Youth Center

STATE OF ALABAMA)
ELMORE COUNTY     )

Sworn to and subscribed before me and given under my hand and official seal this the _9th_ day of _Jan._____ 2008.

Notary Public

_11/09/09_
My Commission Expires

Ex6 P2

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Calvin Alphonse Lee, #152056   )
            )
  PLAINTIFF,       )
            ) CIVIL ACTION NO. 2:07-CV-973-MEF
Paul Whatley, et al.,      )
            )
  DEFENDANTS.     )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Janet Hicks, who being known by me and first duly sworn, deposes and says under oath as follows:

My name is Janet Hicks and I am presently employed as a Correctional Lieutenant with the Department of Corrections, at Frank Lee Work Release Center, Deatville, Alabama. I am over twenty-one (21) years of age. By my signature below, I certify that the statements therein are true to the best of my knowledge.

In his complaint, inmate Calvin Lee, BM/152056, alleges that he has been discriminated against because he has not been given a lesser custody, been allowed to work on a community squad or qualified for Work Release. I, Lt. Janet Hicks, know nothing in regards to inmate Lee's classification or custody at Frank Lee Work Release Center.

Inmate Lee also alleges that I have failed to enforce the rules concerning inmates smoking in the buildings at Frank Lee Work Release Center, this is not true. Inmate Lee never complained to me, personally, about the amount if smoke he has been subjected to



due to inmates smoking in the dorms.  As a shift supervisor, I expect the officers working under my supervision to enforce the rules and regulations.  Any inmates caught smoking in the dorms on the shifts I have worked (1st & 2nd) have been subjected to disciplinary action in the form of a citation.   Inmates in any facility where tobacco products are sold are subjected to smoke inhalation.  I am all for removing the sell of tobacco from all facilities so inmates like inmate Lee will not have to inhale the smoke of others.  I know nothing of his medical conditions.

In his amended complaint, inmate Lee alleges that he received a disciplinary for violation of Rule #53, Inciting to Riot, in retaliation from a previous writ he filled, naming me.  Prior to me initiating disciplinary action against inmate Lee, I knew nothing about his writ, nor did I know I was named in the suit.  I am a Notary and have always notarized anything inmate Lee had asked to be notarized.  If I were retaliating against him, as he alleges, I would not have notarized any of the writs for him.  When notarizing anything for inmate Lee, I only notarized it. I did not read it.

I did, however, charge inmate Lee accordingly, after he became disruptive and began encouraging others on the Exercise Yard to demand to see the Warden in regards to me.  I was not forced to charge him, nor did I conspire with anyone in regards to inmate Lee.  Once I learned of the situation on the yard, from the Warden, I initiated disciplinary action against inmate Lee.  I did receive a telephone call from Warden Levan Thomas, who informed me that he was told about inmate Lee causing a disturbance on the yard.  I knew nothing of inmate Lee's actions prior to the telephone call.    Attached is a copy of the incident report (#FLWRC07-548) in which inmate Lee was charged.  Also attached is

Ex 7 P2

a copy of the disciplinary, Sgt. Nathan Parrish chaired, in which inmate Lee was found guilty of Inciting to Riot.

At no time did I retaliate against inmate Lee, nor did I conspire against inmate Lee because the "writs" he has filed. My actions were in the course and scope of my duties, as a Correctional Lieutenant at Frank Lee Work Release Center. This statement is true and correct.

_____

Janet Hicks, Correctional Lieutenant
Frank Lee Work Release Center


STATE OF ALABAMA)
ELMORE COUNTY    )

Sworn to and subscribed before me and given under my hand and official seal this the _____ day of _____, 2008.

_____
Notary Public

_____
My Commission Expires

Ex 7  P3

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT

| 1. Institution:<br>**Frank Lee Work Release Center** | **2. Date:**<br>11/16/07 | 3. Time:<br>8:30 a.m. | 4.   Incident   Number:<br>FLWRC 07-548 | Class Code:<br>C |
|---|---|---|---|---|
| 5. Location Where Incident Occurred:<br>FLWRC - Shift Office | | 6. Type of Incident:  #63, Inciting to Riot | | |
| 7. Time Incident Reported:<br>6:30 a.m.(11/17/07) | | 8. Who Received Report:<br>Warden Levan Thomas | | |

| 9. Victims: | Name | | | | AIS | |
|---|---|---|---|---|---|---|
| a. | N/A | | | No. | | |
| b. | | | | No. | | |
| c. | | | | No. | | |

| 10. Suspects: | Name | AIS | | 11. Witnesses: | Name | AIS | |
|---|---|---|---|---|---|---|---|
| a | Calvin Lee | No. | B/152056 | a | N/A | No. | |
| b | | No. | | b | | No. | |
| c | | No. | | c | | No. | |
| d | | No. | | d | | No. | |
| e | | No. | | e | | No. | |
| | | | | f | | No. | |
| | | | | g | | No. | |

**PHYSICAL EVIDENCE:**

12. Type of Evidence

   N/A

13. Description of Evidence:

   N/A

14. Chain of Evidence:

a   N/A
b
c
d
e

15. Narrative Summary:

   On November 16, 2007, Lt. Janet Hicks was the on duty Shift Commander at Frank Lee Work Release Center.  Lt. Hicks had instructed the officers assigned to the First Shift to direct the inmates to the Exercise Yard for the cleaning of the center.  The officers did as instructed.  Several inmates assigned to Dorm A complained that they did not have to go outside if they were assigned to Work Release.  Lt. Hicks explained to most of the inmates that if they did not have a job, they had to report outside, they could not sleep in; per Warden Thomas.  The inmates went outside as instructed.  After instructing the inmates to report to the yard, Lt. Hicks received a telephone call from Captain Horace Burton, who instructed Lt. Hicks to bring the inmates back inside.  Lt. Hicks followed the order given.  The inmates returned inside.  At approximately 8:30 a.m., Warden Levan Thomas telephoned Lt. Hicks in the Shift Office and questioned her about inmate Calvin Lee, BM/152056.  InmateLee had been summoned to the Warden's Office for questioning.  Lt. Hicks had no knowledge about the claims inmate Lee was making in reference to him being wet and ran out of the dorm earlier that

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| Frank Lee Work Release Center | FLWRC 07- 548 | C |

| Date: | Type of Incident: |
|---|---|
| 11/16/07 | Inciting to Riot |

Narrative Summary (Continued) Page No. 2

morning. Lt. Hicks informed Warden Thomas that inmate Lee had been seated at the table in the back of Dorm A, reading the newspaper when Lt. Hicks had ordered him to the yard. Inmate Lee did not state that he was wet. Lt. Hicks explained to Warden Thomas that if inmate Lee had of informed Lt. Hicks that he was wet, Lt. Hicks would have directed him to the shower, given him a change of dry clothes and then directed him to the yard. Inmate Lee had been seated at the table in the back of the dorm, reading. The day before that, Lt. Hicks had run him out of the Kitchen during Yard Call, reading the newspaper. Lt. Hicks further explained to Warden Thomas that inmate Lee worked for her and she had never had a problem with him, that he was a good worker. Warden Thomas and Lt. Hicks ended their conversation.

A short time later, one of the Stewards assigned to the Kitchen entered the office and asked Lt. Hicks if she was writing inmate Lee a disciplinary. Lt. Hicks asked her why and she stated that inmate Lee had been trying to get the inmates assigned to FLWRC to refuse to go to the yard, that he had called Lt. Hicks all kinds of names and that he had been shouting out on the yard that all the inmates needed to see the Warden when he got in, that Lt. Hicks could not ship all of the inmates if they refused to go outside. Lt. Hicks informed the Steward that if she heard inmate Lee making these statements she could write him up. She stated that inmate Lee was one of the best workers she had. Lt. Hicks ended the conversation. An inmate, who Lt. Hicks considered to be a confidential informant, entered the office and stated that he wanted to give Lt. Hicks a "heads up," that inmate Lee was out on the yard trying to get the inmates to complain about her to Warden Thomas.

On Saturday, November 17, 2007, Lt. Hicks reported to work and several inmates informed Lt. Hicks that inmate Lee had been going from dorm to dorm, trying to get the inmates to sign a petition against Lt. Hicks. Lt. Hicks telephoned Warden Thomas and reported the incident to him. Warden Thomas instructed Lt. Hicks to inititate disciplinary action against inmate Lee for violation of Rule #53, Inciting to Riot, and that inmate Lee would be transferred. Lt. Hicks reported to work on Monday, November 19, 2007, to complete the paperwork. No further action taken at this time. Inmate Lee remains at FLWRC, pending transfer and disciplinary action.

Lt. Janet Hicks
_____
Lieutenant Janet Hicks

ALDOC Form 225B

**ALABAMA DEPARTMENT OF CORRECTIONS** *FLWRC 07-548*
**DISCIPLINARY REPORT**

1.  Inmate: __Calvin Lee__          Custody: __Minimum__          AIS: __BM/152056__

2.  Facility: __FRANK LEE YOUTH CENTER__

3.  The above named inmate is being charged by __Lt. Janet Hicks__ with violation of rule number __53__ specifically __Inciting to Riot__ from regulation # __403__ which occurred on or about __November 16__, 2007 at (time) __6:50 a.m.__ (am / pm), Location: __FLWRC – Exercise Yard__ . A hearing on this charge will be held after 24 hours from service.

4.  Circumstances of the violation(s) are as follows: __After being ordered to report to the Exercise Yard, for the cleaning of the center, you, inmate Calvin Lee, BM/152056, were observed by an employee shouting, "We want to see the Warden, Lt. Hicks can't ship all of us," as a group of inmates surrounded you. Also several inmates have reported to Lt. Hicks that you were going from dorm to dorm, and that you were out on the yard trying to get any inmate who would listen to demand to see the Warden, in reference to Lt. Hicks__ .

    ___11/19/07___                              _[signature]_
    Date                                   Arresting Officer / Signature / Rank

5.  I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the __19__ day of __Nov__ , 20__07__ at (time) __12:46__ (am/pm).

    _[signature]_                    __Refused To Sign__ _[signature]_
    Serving Officer / Signature / Rank           Inmate's Signature / AIS Number

6.  Witnesses desired?    NO _____    YES _[signature] Calvin Lee_
                        Inmate's Signature                    Inmate's Signature

7.  If yes, list: __Carlton Cook W/175201 & Johnny Dobbins B/133351__

8.  Hearing Date __11/30/07__    Time __1:50 pm__    Place __Kilby__

9.  Inmate must be present in Hearing Room.  If he/she is not present explain in detail on additional page and attach.

10. A finding is made that inmate (is) is not) capable of representing himself.
    _[signature]_
    Signature / Hearing Officer

11. Plea: _[signature] Calvin Lee_ Not Guilty _____ Guilty

12. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.
    _[signature]_
    Signature / Hearing Officer

_[ENTERED stamp]_
12-6-07

Annex C to AR 403  (Page 1 of 5)

F WRC 07-548

13. Arresting Officer's testimony (at the hearing):    I want to start out by saying, this inmate worked for me. I've Never had any problems with him. The day this happened, I had no idea it happened. The Warden called me and questioned me. I learned that inmate Lee had been out on the yard shouting he wanted to see the Warden. Someone had told him that inmate Lee was cursing at me and that he was inciting a riot. When he asked me if I was writing him up, initially I said no and suggested that who ever told him this should write him up. It wasn't until the next day when inmates came to me and told me what he had done. It was determined then that (cont)

14. Inmate's Testimony:    See the attached statement. I went on the yard and said I wanted to see the Warden. I Wanted to explain to him that I was wet and cold. Everybody else was saying they wanted to see the Warden. Sgt. Grays came around the building and told everybody that they weren't going to get anywhere like they were Acting. She told us we were going to see the Warden. Q: Why were you wet? A: I work on Recycle. I was Seated at the table when Lt. Hicks entered the dorm, looking for an article in the newspaper. I was at the (cont)

Witness:    Johnny Dobbins, #133351        Substance of Testimony:   See attached statement


Witness:    Carlton Cook, #175201        Substance of Testimony:   See attached statement


Witness:    N/A        Substance of Testimony:


15. The inmate was allowed to submit written question to all witnesses. Copy of questions and answers are attached.

_____
Signature / Hearing Officer

16. The following witnesses were not called  - Reason not called

1.  N/A    _____

2.  _____    _____

3.  _____    _____

17. After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)

The Hearing Officer finds that: On November 16, 2007, inmate Calvin Lee, BM/152056, was observed on the yard, shouting he wanted to see the Warden after being run outside for the cleaning of the center. Several inmates were gathered around him and they too began to shout they wanted to see the Warden and had to be quieted or quelled by Sgt. Grays. Such action as described in this case is not permitted at FLWRC and constitutes a violation of Rule #53, Inciting to Riot.

18. **Basis for Finding of Fact:** The Hearing Officer based his findings on the testimony of the Arresting Officer who stated that she had no idea what was going on at the time, it wasn't until she received a telephone call from the Warden that she learned that inmate Lee was on the yard, causing problems. Also both witness statements note that inmate Lee was on the yard stating he wanted to see the Warden and several inmates were gathered.

19. Hearing Officer's Decision:    __X__ Guilty    _____ Not Guilty

20. Recommendation of Hearing Officer: (30) days loss of store, visitation and telephone privileges. Does not Earn GT. Refer to Classification for custody review.

_____
Signature / Hearing Officer

Sgt. Nathan Parrish
Typed Name and Title

21. Warden's Action – Date _12/4/07_

Approved _____

Disapproved _____

Other (specify) _____

22. Reason if more then 30 calendar days delay in action. _____

23. I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above named inmate on this the __6th__ day of _December_ 20_07_ at (time) _12 p.m._ (am)/ pm).

_____        _____
Signature / Serving Officer / Title        Inmate's Signature and AIS Number 152056

8

FLYRC 07-548

## ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT (OPTIONAL)

Inmate Name /AIS Number    **Calvin Lee**    Incident Report No.  **FLYC 00-**

Facility :    **Frank Lee Youth  Center**

CONTINUED ARRESTING OFFICER'S (AO) STATEMENT AND/OR QUESTION BY HEARING OFFICER
(QBHO) TO ARRESTING OFFICER:    that inmate Lee was inciting to riot.  We had never had a problem.  The day
before he was in the dining area with his newspapers.  I ran him out that day.  Q:  Did you hear inmate Lee on the yard?
A:  No, didn't know anything about his actions until I was told by the Warden and several inmates I consider to be
confidential informants. Q:  Did he appear to be wet on the date of the incident?  A:  If he was wet, he would have told
me he was and I would have allowed him to shower.  He never said anything to me.

CONTINUED INMATE'S STATEMENT AND/OR QUESTIONS BY HEARING OFFICER (QBHO) TO
INMATE:    table in the back of dorm by the heater. Q:  Is it your testimony that you were wet?  A:  Yes.  Q:  Did you
inform Lt. Hicks that you were wet?  A:  No.

CONTINUED WITNESS TESTIMONY (QBHO):

CONTINUED FINDINGS OF FACTS:

CONTINUED BASIS FOR FINDING OF FACT:

9

Annex C to AR403 (Page 4 of 5)

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

FLWRC07-548

## INCIDENT REPORT/DUTY OFFICER REPORT CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| **FRANK LEE YOUTH CENTER** | **FLY-C 06-** | |

| Date: | Type of Incident: |
|---|---|
| | |

Narrative Summary (Continued) Page No.

Nov. 25, 2007

I, Johnny Dobbins, 133351, doesn't feel that inmate Kevin Lee wasn't or didn't incited a riot due to point he was trying to get a point across that needed to be address to the Warden and Lt. Hick's due to the point it was harsh temperature's outside that would made him sick also any one the same way. It was below 35° degress and Lt. Hick's kick all the work-release inmate's out the door some had got a job at the chicken plant one inmate walked up to her and said I got to go to work at 2:00 her response was "well y'all be in before 2:00 p.m." to condemed something from happening, inmate Lee and other's spoke up at the same time about the same thing they well Lt. Hick's just pull inmate Lee well single him out nobody else when everybody was involved's was quick to ship him they should ship all of us if that was the case. The incident happen on Nov. 16th 2007.

My Conclusion work-release is a right not a privelage we as inmate's we as work-release has earned our right to be here we have did everything that the State has require us to do as well as did every thing they had told us to do in order for us to get back to our family's and Lt. Hick did not like that's why they ship him.

They are used to a Level 2 instead of a Level 1.

Date back of Nov. 16th 2007. If it serves me right a riot plot's to take over something...

_(signature)_

ADOC Form 302-B – June 1, 2005

10

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

INCIDENT REPORT/DUTY OFFICER REPORT    FLWRC07-548
CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| FRANK LEE YOUTH CENTER | FLYC 06- | |
| Date: | Type of Incident: | |

Narrative Summary (Continued) Page No.

On friday 16-07, we were told to go out side, the same complaining some one, made statement, look at Lt Hicks setting here with her coat on and sending us out in the cold. I went out and around side of B dorm, where the sun can hit you and the wind not so bad.

I sat down drinking coffee and smoking and four other guys who transferred here for work release who talking to each other about the cold and working different shifts and being put out in cold, one said he was going to get his Mom to call and complain to the warden.

Then I heard a bunch of noise on other side of A dorm and got up to see what was going on, a bunch of people were saying that they wanted to talk to the warden. Calvin was there saying I want to talk to the warden, I and some others went in the dining room area because some others were there. People were out side the door saying we want to see the Warden. Sgt Gray came in an told every one to settle down, that was no way to act to see the warden, she was going to call him. Lt Hicks came behind ... told every one to go out side. The were about 20-25 people in the dining room (not yelling) When we went outside they were about 100-120 say they wanted to see warden. Calvin was saying he want to talk to the warden Sgt Parrish and officer Wise come around from kitchen area and Sgt Gray, She told everyone to quite down that they were not going to get any where talking and acting the way they were, Everybody started quiting down. She said the warden was on his way to talk to everyone. While people were waiting they were talking about all the things they needed to bring to the warden's attention. Calvin walked off to his self and I walked over and ask him what was wrong. He told me he was behind the kitchen and got soaking wet and Lt. Hicks told him to go out side and he told her he was soaking wet and it was cold. He said he wanted to talk to the warden. The count buzzer went off and Lt Hicks announce (Lock down) After they sent Calvin up front. Sgt Gray come to the shift office and I was talking to people and I ask her to speak to the warden.

ADOC Form 302-B – June 1, 2005

11

She ask my name and said she would tell him. The warden come to the back and I ask him could I talk to him, he said

Question's For The Disciplinary Hearing

1. I was not attempting or have ever attempted to incite a Riot.

2. LT. Hick's don't I Calvin A. Lee, both had everytime something is wrong or I have a legitimate complaint. __Sometimes__

3. LT. Hick's have you had any problem's, with me Calvin A. Lee being Cooperative in the past 19 month's that I have been assigned at Frank Lee Work-Release. __Never had a problem__

4. LT. Hick's how would you describe my conduct had this Assaultion not been mentioned. __Good__

5. Lt. Hick's am I a threat to you or any other officer at Frank Lee Work Release. __Never had a problem   never felt threatened.__

Statement: LT. Hick's my opinion of you as a D.O.C. official is that you are the best one at Frank Lee Work-Release, I think highly of you. And nothing is going to change that. It troubles me, that you would bring these charges of this nature against me. Even though I have implicated you in a 1983 complaint. In all honesty the complaint wasn't filed to harm you. But done in hopes of getting higher Authorities. To issue Memo's and Regulation's. For you to have as a guide line, so that you won't have to make judgement calls on critical issue's pretaining to the inmates, here at Frank Lee. It's been an Honor working so closely with you; This is my life at Risk here. My mother and Father's life, my Children and wife. All which is in your hand, I trust that you will do what is desired of God.

6. LT. Hick's this is all just a misunderstanding that in time will work itself out. Trust me. I am not fighting you but only attempting to Reason with you

12

Question For The Disciplinary Hearing

7. LT. Hick's Frank Lee Work-Release is operating as 3 different type Institution's isn't it. Work-Release, honor camp, level of feeding and school. It's a level 1, 2 +4 during feeding never honor camp.

8. LT. Hick's there aren't any Meon's or Regulation's governing exactly what exact procedure's to take, regarding certain situation's. Is this true And because of the different issue presented daily, It is extremely stressful as the Soc. Staff. Would you say that because of all the confusion and chaos any incident out of character. Could be easily blowed out of proportion or needed to be determined as something that it's not. On this particular day, I pulled Warden if he said rain them out + Collean up.

9. LT. Hick's on November 16, weren't you more disappointed with me, because of my complaining. And wouldn't you say that maybe out of anger, rather than the inciting a Riot charge. You leveled these charges against me. I was instructed to write you up for It 53

10. Due Process law's require that one accused has a constitutional right to know all his accuser's. On the Disciplinary Report LT. Hick's states that an employee observed me inciting a Riot. Who is that Employee and I would like a sworn Affidavit of their statement to this Report Also the same Sworn Affidavit of the names of the Inmate's mentioned in the Disciplinary Report. Irrelevent, we don't give names of informants.

11. I have two (2) witness on my behalf, that I would like the Hearing Board to hear, and consider their. Statement as to what transpired November 16, 2018 (a) Chedden Cook W/175201, (b) Johnny Dobbins B/133551

12. LT. Hick's how many inmates did you hear or see shouting that they wanted to see the warden. None

13. Request to Amend to these Question's at a later time.

13

Certificate of Service

I do hereby certify that a copy of Questions and a statement of Explanation was served on the Disciplinary Hearing Board to be Retained on Record. This was done the _____ Day of _____ 2007.

Respectfully Submitted;

Kilby Corr. Fac.
P.O. Box 150
Mt. Meigs, Al. 36057

Also the Accused Calvin A. Lee Request that this hearing be postponed until the Court Grant a Writ of Testificandum. For the (2) two witnesses to appear at the hearing.

This charge or violation of Rule 53 is without merit. Because to excite a Riot. This has to occur

ite ;    I have to Arouse to action, stir-up. To provoke or urge on

oke ;    To excite to Anger. To stir up on purpose.

t :    mean A wild or turbulent disturbance, created by a large number of people. (Law) A violent disturbance of the public peace, by three or more persons, assembled for a common purpose    14

Act:    is if 12 or more people unlawfully assemble and disturb the public peace. They must

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT

| 1. Institution:<br>**Frank Lee Work Release Center** | **2. Date:**<br>11/16/07 | 3. Time:<br>8:30 a.m. | 4. Incident Number:<br>FLWRC 07- 54/8 | Class Code:<br>C |
|---|---|---|---|---|

| 5. Location Where Incident Occurred:<br>FLWRC - Shift Office | 6. Type of Incident: #53, Inciting to Riot |
|---|---|

| 7. Time Incident Reported:<br>6:30 a.m.(11/17/07) | 8. Who Received Report:<br>Warden Levan Thomas |
|---|---|

9. Victims:            Name                                    AIS
a.    N/A _____    No. _____
b. _____    No. _____
c. _____    No. _____

| 10. Suspects:    Name            AIS | 11. Witnesses:    Name        AIS |
|---|---|
| a  Calvin Lee _____  No.  B/152056 | a  N/A _____  No. _____ |
| b _____  No. _____ | b _____  No. _____ |
| c _____  No. _____ | c _____  No. _____ |
| d _____  No. _____ | d _____  No. _____ |
| e _____  No. _____ | e _____  No. _____ |
| | f _____  No. _____ |
| | g _____  No. _____ |

PHYSICAL EVIDENCE:
12. Type of Evidence
   N/A
_____
_____
_____
_____

13. Description of Evidence:
   N/A
_____
_____
_____
_____

14. Chain of Evidence:
a  N/A _____
b _____
c _____
d _____
e _____

15. Narrative Summary:
   On November 16, 2007, Lt. Janet Hicks was the on duty Shift Commander at Frank Lee Work Release Center. Lt. Hicks had instructed the officers assigned to the First Shift to direct the inmates to the Exercise Yard for the cleaning of the center. The officers did as instructed. Several inmates assigned to Dorm A complained that they did not have to go outside if they were assigned to Work Release. Lt. Hicks explained to most of the inmates that if they did not have a job, they had to report outside, they could not sleep in; per Warden Thomas. The inmates went outside as instructed. After instructing the inmates to report to the yard, Lt. Hicks received a telephone call from Captain Horace Burton, who instructed Lt. Hicks to bring the inmates back inside. Lt. Hicks followed the order given. The inmates returned inside. At approximately 8:30 a.m., Warden Levan Thomas telephoned Lt. Hicks in the Shift Office and questioned her about inmate Calvin Lee, BM/152056. InmateLee had been summoned to the Warden's Office for questioning. Lt. Hicks had no knowledge about the claims inmate Lee was making in reference to him being wet and ran out of the dorm earlier that

Distribution: ORIGINAL AND ONE (1) COPY to Central I & I Division          COPY to Deputy Commissioner of Operations (Class A and B ONLY)
               COPY to Institutional File                                              COPY to Central Records Office
                                                                                       ADOC Form 302-A – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| **Frank Lee Work Release Center** | FLWRC 07- 548 | C |

| Date: | Type of Incident: |
|---|---|
| 11/16/07 | Inciting to Riot |

Narrative Summary (Continued) Page No. 2

morning. Lt. Hicks informed Warden Thomas that inmate Lee had been seated at the table in the back of Dorm A, reading the newspaper when Lt. Hicks had ordered him to the yard. Inmate Lee did not state that he was wet. Lt. Hicks explained to Warden Thomas that if inmate Lee had of informed Lt. Hicks that he was wet, Lt. Hicks would have directed him to the shower, given him a change of dry clothes and then directed him to the yard. Inmate Lee had been seated at the table in the back of the dorm, reading. The day before that, Lt. Hicks had run him out of the Kitchen during Yard Call, reading the newspaper. Lt. Hicks further explained to Warden Thomas that inmate Lee worked for her and she had never had a problem with him, that he was a good worker. Warden Thomas and Lt. Hicks ended their conversation.

A short time later, one of the Stewards assigned to the Kitchen entered the office and asked Lt. Hicks if she was writing inmate Lee a disciplinary. Lt. Hicks asked her why and she stated that inmate Lee had been trying to get the inmates assigned to FLWRC to refuse to go to the yard, that he had called Lt. Hicks all kinds of names and that he had been shouting out on the yard that all the inmates needed to see the Warden when he got in, that Lt. Hicks could not ship all of the inmates if they refused to go outside. Lt. Hicks informed the Steward that if she heard inmate Lee making these statements she could write him up. She stated that inmate Lee was one of the best workers she had. Lt. Hicks ended the conversation. An inmate, who Lt. Hicks considered to be a confidential informant, entered the office and stated that he wanted to give Lt. Hicks a "heads up," that inmate Lee was out on the yard trying to get the inmates to complain about her to Warden Thomas.

On Saturday, November 17, 2007,Lt. Hicks reported to work and several inmates informed Lt. Hicks that inmate Lee had been going from dorm to dorm, trying to get the inmates to sign a petition against Lt. Hicks. Lt. Hicks telephoned Warden Thomas and reported the incident to him. Warden Thomas instructed Lt. Hicks to inititate disciplinary action against inmate Lee for violation of Rule #53, Inciting to Riot, and that inmate Lee would be transferred. Lt. Hicks reported to work on Monday, November 19, 2007,to complete the paperwork. No further action taken at this time. Inmate Lee remains at FLWRC, pending transfer and disciplinary action.

Lt. Janet Hicks
Lieutenant Janet Hicks

ALDOC Form 225B

*FLWRC 07-548*

## ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT

1. Inmate: **Calvin Lee** _____     Custody: **Minimum** _____     AIS: **BM/152056** _____

2. Facility: **FRANK LEE YOUTH CENTER**

3. The above named inmate is being charged by **Lt. Janet Hicks** with violation of rule number **53** specifically **Inciting to Riot** from regulation # **403** which occurred on or about **November 16**, 20**07** at (time) **6:50 a.m.** (am / pm), Location: **FLWRC – Exercise Yard** . A hearing on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows: **After being ordered to report to the Exercise Yard, for the cleaning of the center, you, inmate Calvin Lee, BM/152056, were observed by an employee shouting, "We want to see the Warden, Lt. Hicks can't ship all of us," as a group of inmates surrounded you.  Also several inmates have reported to Lt. Hicks that you were going from dorm to dorm, and that you were out on the yard trying to get any inmate who would listen to demand to see the Warden, in reference to Lt. Hicks** .

_11/19/07_ _____
Date                                        Arresting Officer / Signature / Rank

5. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the _19_ day of _Nov_ , 20_07_ at (time) _12:46_ (am/pm).

_____                                        _Refused To Sign_ _____
Serving Officer / Signature / Rank                    Inmate's Signature / AIS Number

6. Witnesses desired?     NO _____          YES _Calvin Lee_
                              Inmate's Signature              Inmate's Signature

7. If yes, list: _Carlton Cook w/175201 & Johnny Dobbins B/133351_

8. Hearing Date _11/30/07_     Time _1:50 pm_     Place _Kilby_

9. Inmate must be present in Hearing Room.  If he/she is not present explain in detail on additional page and attach.

10. A finding is made that inmate (is/ is not) capable of representing himself.
_____
Signature / Hearing Officer

11. Plea: _Calvin Lee_ Not Guilty _____ Guilty

12. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.
_____
Signature / Hearing Officer

ENTERED
12-6-07

## 17

Annex C to AR 403  (Page 1 of 5)

F. DOC 07-570

13. Arresting Officer's testimony (at the hearing):    I want to start out by saying, this inmate worked for me. I've
Never had any problems with him. The day this happened, I had no idea it happened. The Warden called me
and questioned me. I learned that inmate Lee had been out on the yard shouting he wanted to see the Warden.
Someone had told him that inmate Lee was cursing at me and that he was inciting a riot. When he asked me if
I was writing him up, initially I said no and suggested that who ever told him this should write him up. It wasn't
until the next day when inmates came to me and told me what he had done. It was determined then that (cont)

14. Inmate's Testimony:    See the attached statement. I went on the yard and said I wanted to see the Warden. I
Wanted to explain to him that I was wet and cold. Everybody else was saying they wanted to see the Warden.
Sgt. Grays came around the building and told everybody that they weren't going to get anywhere like they were
Acting. She told us we were going to see the Warden. Q: Why were you wet? A: I work on Recycle. I was
Seated at the table when Lt. Hicks entered the dorm, looking for an article in the newspaper. I was at the (cont)

Witness:    Johnny Dobbins, #133351          Substance of Testimony:    See attached statement

Witness:    Carlton Cook, #175201          Substance of Testimony:    See attached statement

Witness:    N/A          Substance of Testimony:

15. The inmate was allowed to submit written question to all witnesses. Copy of questions and answers are attached.

_____
Signature / Hearing Officer

16. The following witnesses were not called  -  Reason not called

1.  N/A          _____

2.  _____          _____

3.  _____          _____

18

17. After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
The Hearing Officer finds that:    On November 16, 2007, inmate Calvin Lee, BM/152056, was observed on
the yard, shouting he wanted to see the Warden after being run outside for the cleaning of the center.  Several
inmates were gathered around him and they too began to shout they wanted to see the Warden and had to be
quieted or quelled by Sgt. Grays.  Such action as described in this case is not permitted at FLWRC and consti-
tutes a violation of Rule #53, Inciting to Riot.

18. **Basis for Finding of Fact:**    The Hearing Officer based his findings on the testimony of the Arresting Officer
who stated that she had no idea what was going on at the time, it wasn't until she received a telephone call from
the Warden that she learned that inmate Lee was on the yard, causing problems.  Also both witness statements
note that inmate Lee was on the yard stating he wanted to see the Warden and several inmates were gathered.

19. Hearing Officer's Decision:    __X__  Guilty    _____  Not Guilty

20. Recommendation of Hearing Officer:   (30) days loss of store, visitation  and telephone privileges.  Does not
Earn GT. Refer to Classification for custody review.

_____
Signature / Hearing Officer
Sgt. Nathan Parrish
_____
Typed Name and Title

21. Warden's Action – Date  12/4/07
Approved
Disapproved  _____
Other (specify)  _____

_____

22. Reason if more then 30 calendar days delay in action.  _____

_____

23. I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above
Named inmate on this the  6th  day of  December  2007  at (time)  6 p.m.  (am/ pm).

_____          _____
Signature / Serving Officer / Title          Inmate's Signature and AIS Number   152056

19

Annex C to AR 403  (Page 3 of 5)

ALABAMA DEPARTMENT OF CORRECTIONS
DISCIPLINARY REPORT (OPTIONAL)

FLWRC 07-548

Inmate Name /AIS Number     **Calvin Lee**                          Incident Report No.   **FLYC 00-**

Facility :        **Frank Lee Youth  Center**

CONTINUED ARRESTING OFFICER'S (AO) STATEMENT AND/OR QUESTION BY HEARING OFFICER (QBHO) TO ARRESTING OFFICER:   that inmate Lee was inciting to riot.  We had never had a problem.  The day before he was in the dining area with his newspapers.  I ran him out that day.  Q:  Did you hear inmate Lee on the yard? A:  No, didn't know anything about his actions until I was told by the Warden and several inmates I consider to be confidential informants. Q:  Did he appear to be wet on the date of the incident?  A:  If he was wet, he would have told me he was and I would have allowed him to shower.  He never said anything to me.

CONTINUED INMATE'S STATEMENT AND/OR QUESTIONS BY HEARING OFFICER (QBHO) TO INMATE:    table in the back of dorm by the heater.  Q:  Is it your testimony that you were wet?  A:  Yes.  Q:  Did you inform Lt. Hicks that you were wet?  A:  No.

CONTINUED WITNESS TESTIMONY (QBHO):

CONTINUED FINDINGS OF FACTS:

CONTINUED BASIS FOR FINDING OF FACT:

20

Annex C to AR403 (Page 4 of 5)

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

FLW2C07-548

## INCIDENT REPORT/DUTY OFFICER REPORT CONTINUATION

| Institution: **FRANK LEE YOUTH CENTER** | Incident Number: **FLYC 06-** | Class Code: |
|---|---|---|

| Date: | Type of Incident: |
|---|---|

Narrative Summary (Continued) Page No.

Nov. 25, 2007

I, JOHNNY DOBBINS, 133351, DOESN'T FEEL THAT INMATE KEVIN LEE WASN'T OR DIDN'T INCITED A RIOT DUE TO POINT HE WAS TRYING TO GET A POINT ACROSS THAT NEEDED TO BE ADDRESS TO THE WARDEN AND LT. HICK'S DUE TO THE POINT IT WAS HARSH TEMPERATURE'S OUTSIDE THAT WOULD MADE HIM SICK ALSO ANY ONE THE SAME WAY. IT WAS BELOW 35° DEGRESS AND LT. HICK'S KICK ALL THE WORK-RELEASE INMATE'S OUT THE DOOR SOME HAD GOT A JOB AT THE CHICKEN PLANT ONE INMATE WALKED UP TO HER AND SAID I GOT TO GO TO WORK AT 2:00 HER RESPONSE WAS "WELL YALL BE IN BEFORE 2:00 P.M." TO CONDEMED SOMETHING FROM HAPPENING, INMATE LEE AND OTHER'S SPOKE UP AT THE SAME TIME ABOUT THE SAME THING THEY WELL LT. HICK'S JUST PULL INMATE LEE WELL SINGLE HIM OUT NOBODY ELSE WHEN EVERYBODY WAS INVOLVED'S WAS QUICK TO SHIP HIM THEY SHOULD SHIP ALL OF US IF THAT WAS THE CASE. THE INCIDENT HAPPEN ON Nov. 16TH 2007.

My CONCLUSION WORK-RELEASE IS A RIGHT NOT A PRIVELAGE WE AS INMATE'S WE AS WORK-RELEASE HAS EARNED OUR RIGHT TO BE HERE WE HAVE DID EVERYTHING THAT THE STATE HAS REQUIRE US TO DO AS WELL AS DID EVERY THING THEY HAD TOLD US TO DO IN ORDER FOR US TO GET BACK TO OUR FAMILY'S AND LT. HICK DID NOT LIKE THAT'S WHY THEY SHIP HIM.

THEY ARE USED TO A LEVEL 2 INSTEAD OF A LEVEL 1.
DATE BACK OF Nov. 16TH 2007. IF IT SERVES ME RIGHT A RIOT PLOT'S TO TAKE OVER SOMETHING...

ADOC Form 302-B – June 1, 2005    21

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

FLYRC 07-548

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| **FRANK LEE YOUTH CENTER** | **FLYC 06-** | |
| Date: | | Type of Incident: |

Narrative Summary (Continued) Page No.

On friday 1-6-07, we were told to go out side, the same complaining some one, made statement, look at Lt Hicks setting there with her coat on and sending us out in the cold. I went out and around side of B dorm, where the sun can hit you and the wind not so bad.

I sat down drinking coffee and smoking and four other guys who transferred here for work release was talking to each other about the cold and working different shifts and being put out in cold. One said he was going to get his Mom to call and complain to the warden.

Then I heard a bunch of noise on other side of A dorm and got up to see what was going on, a bunch of people were saying that they wanted to talk to the warden. Calvin was there saying I want to talk to the warden, I and some others went in the dining room area because some others were there. People were out side the door saying we want to see the Warden, Sgt Gray came in an told ever one to settle down, that was no way to act to see the warden, she was going to call him. Lt Hicks came before. told every one to go out side. The were about 20-25 people in the dining room (not yelling) When we went outside they were about 100-120 say they wanted to see warden. Calvin was saying he want to talk to the warden, Sgt Arnold and officer Liles came around from kitchen area and Sgt Gray, She told everyone to quit down that they were not going to get anywhere talking and acting the way they was, Everybody started quiting down. She said the warden was on his way to talk to everyone. While people were waiting, they were talking about all the things they needed to bring to the warden's attentions. Calvin walked off to his self and I walked over and ask him what was wrong. He told me he was behind the kitchen and got soaking wet and Lt. Hicks told him to go out side and he told her he was soaking wet and it was cold. He said he wanted to talk to the warden. The count buzzer went off and Lt Hicks announce (Lock down) After they sent Calvin up front. Sgt Gray came to the shift office and was talking to people and I ask her to speak to the warden. She ask my name and said she would tell him. The warden come to the back and I ask him could I talk to him, he said

ADOC Form 302-B – June 1, 2005

22

Question's For The Disciplinary Hearing

1. I was not attempting or has ever attempted to incite a Riot.

2. LT. Hick's don't I Calvin A. Lee, talk loud everytime something is wrong or I have a legitimate Complaint. <u>Sometimes</u>

3. LT. Hick's have you had any problem's with Me Calvin A. Lee being Cooperative in the past 19 month's that I have been assigned at Frank Lee Work-Release. <u>Never had a problem</u>

4. LT. Hick's how would you describe my Conduct had the Revolation not been mentioned. <u>Good</u>

5. Lt. Hick's am I a threat to you or any other officer at Frank Lee Work Release. <u>Never had a problem</u> never felt <u>threatened.</u>

Statement: LT. Hick's my opinion of you as a D.O.C. Official is that you are the best one at Frank Lee Work-Release. I think highly of you. And nothing is going to change that. It troubles me, that you would bring these charges of this nature against me. Even though I have implicated you in a 1983 Complaint. In all honesty the complaint wasn't filed to harm you. But done in hopes of getting higher Authorities. To issue Memo's and Regulation's. For you to have as a guide line, so that you wont have to make judgement call's on critical issue's pretaing to the inmates, here at Frank Lee. It's been an honor working so closely with you; This is my life at risk here. My mother and Father's life, my Children and wife. All which is in your hand, I trust that you will do what is desired of God.

23

6. LT. Hick's this is all just a misunderstanding that in time will work itself out Trust me. I am not fighting you but only attempting to REASON with you

Question for The Disciplinary Hearing

7. LT. Hick's Frank Lee Work-Release is operating as 3 different type Institution's isn't it. Work-Release, Honor-Camp, level of feeding, and school. Its a level 1, 2 & 4 during feeding never honor camp.

8. LT. Hick's There aren't any Mem's or Regulation's governing exactly what exact procedure's to take, regarding certain situation's. Is this true And because of the different issue presented daily, It is extremely stressful on the D.O.C. Staff. Would you say that because of all the confusion and chaos any incident out of character, Could be easily misconstrued or especially as needed to be determined as something that its not. On this particular day, I pulled Warden & the Shift ran than out & Calmin up.

9. LT. Hick's on November 16, wasn't you more disappointed with me, because of my complaining. And wouldn't you say that maybe act of anger, rather than the Inciting a Riot charge. You leveled these charges against me. I was instructed to write you up for 053

10. Due Process law's require that one accused has a constitutional Right to face all his accuser's. On the Disciplinary Report LT. Hick's states that an Employee observed me inciting a Riot. Who is that Employee and I would Like a Sworn Affidavit of their statement to this Reports. Also the same Sworn Affidavit of the names of the Inmate's mentioned in the Disciplinary Report. Irrelevent, we don't give names of informants.

11. I have two 2 witness in my behalf, that I would Like the Hearing Board to here, and consider their statement as to what transpired November 16, 2007 @ Corlton Cook W/175201, @ Johnny Dobbins B/133551

12. LT. Hick's how many inmates did you hear or see shouting that they wanted to see the warden. None

13. Request to Amend to these Questions at a later time.

24

## Certificate of Service

I do hereby certify that a copy of Questions and a statement of Explanation was served on the Disciplinary Hearing Board to be Retained in Record. This was done the _____ Day of _____ 2007.

Respectfully Submitted;

Kilby Corr. Fac.
P. O. Box 150
MT. Meigs, Al 36057

Also the Accused Calvin Lee Request that the hearing be postponed until the court Grant a Writ of Testificandum. For the @ two witnesses to appear at the hearing.

The charge or violation of Rule 53 is without merit. Because to excite a Riot. This has to occur.

cite: I have to Arouse to action, stir-up. To provoke or urge on
excite: To Excite to Anger. To stir up on purpose.
at: mean a wild or turbulent disturbance, created by a large number of people.
(law) A violent disturbance of the public peace, by three or more persons, assembled for a common purpose

Riot: as if 12 or more people intentionally assemble and disturb the public peace. They must disperse upon proclamation or by a reading of felony read the Riot Act.

25

07 PCR SA1

# IN THE UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF ALABAMA

2007 OCT 30  A 9: 38

_Calvin AlPHense Lee #152056_
Full name and prison number
of plaintiff(s)

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

CIVIL ACTION NO. 2:07CV973-MEF
(To be supplied by Clerk of
U.S. District Court)

v.

_Ala. Dept. of Corr. ET. AL, Paul Whatley_
_Kathy Holt, Carolyn Bolson, Debra North) ET. AL._
_Warden Thomas ET AL, F.L.4.C._
_Ala. Bd. of Pardon And Paroles_ ET. AL.
_Prison Healthcare Ser. ET. AL_
Name of person(s) who violated
your constitutional rights.
(List the names of all the
persons.)

I.  PREVIOUS LAWSUITS
    A.  Have you begun other lawsuits in state or federal court
        dealing with the same or similar facts involved in this
        action?  YES (  )  NO ( ✓ )

    B.  Have you begun other lawsuits in state or federal court
        relating to your imprisonment?  YES ( ✓ )  NO (  )

    C.  If your answer to A or B is yes, describe each lawsuit
        in the space below.  (If there is more than one lawsuit,
        describe the additional lawsuits on another piece of
        paper, using the same outline.)

        1.  Parties to this previous lawsuit:

            Plaintiff(s) _Calvin AlPHense Lee #152056_

            Defendant(s) _Warden John Cummins, ET. AL_

        2.  Court (if federal court, name the district; if
            state court, name the county) _Middle_



THE MIDDLE DISTRICT OF ALABAMA

CALVIN ALPHONSE LEE #152056
FULL NAME and PRISON Number
of PLAINTIFF

vs.                                          CIVIL ACTION No.

ALA. DEPT. of Corr. Classification Div.          (To be supplied by Clerk of
KATHY HOLT, Carolyn Golson, DEBRA MARTIN ET. AL.   U.S. DISTRICT Court)
ALA. Bd. of PARDON AND PAROLES
William C. SEGREST Carolyn Flack CYNTHIA Dillard ET AL
PRISON HEALTH SERVICES, INC
DR. CORBER ET. AL.
FRANK Lee yOUTH Center, ENTIRE Correctional STAFF
WARDEN THomas ET. AL.
CAPTAIN Horace BURTON
Classification DEbra Martin
LT. JANET Hicks
LT. McCroy
LT. LACEY
EX-WARDEN John Cummins II

2

3. Docket number _2:07 - CV- 82 MHT_

4. Name of judge to whom case was assigned _Charles E._ _Coody_

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?) _Still pending_

6. Approximate date of filing lawsuit _01- 2006_

7. Approximate date of disposition _unknown_

II. PLACE OF PRESENT CONFINEMENT _Frank Lee Youth Center, P. O. Box_ _220410, Deatsville, Alabama 36022_

PLACE OR INSTITUTION WHERE INCIDENT OCCURRED _Frank Lee Youth_ _Center, P. O. Box 220410, Deatsville, Alabama 36022_

III. NAME **AND ADDRESS** OF INDIVIDUAL(S) YOU ALLEGE VIOLATED YOUR CONSTITUTIONAL RIGHTS.

|   NAME | ADDRESS |
|---|---|

1. _Kathy Holt, Assistant Dir._     _P.O. Box 301501, 1400 Lloyd St. Montg, Al 361_

2. _Carolyn Golson,_   "     " _P.O. Box 301501, 1400 Lloyd St. Montg, Al 36130_

3. _Debra Martin - Classification Specialist, 5375 Ingram Rd Deatsville, Al 36022_

_Parole Bd_ → 4. _Sidney Williams - Chairman  P.O. Box 302405, Montgomery, Al 36130_
_Members_

5. _Carolyn Hack, P. O. Box 302405, Montgomery, Al 36130_

6. _Cynthia Dillard, P. O. Box 302405, Montgomery Al 36130_
_(continue)_

IV. THE DATE UPON WHICH SAID VIOLATION OCCURRED _from June 12th 2006 -_ _thru Present_

V. STATE BRIEFLY THE GROUNDS ON WHICH YOU BASE YOUR ALLEGATION THAT YOUR CONSTITUTIONAL RIGHTS ARE BEING VIOLATED:

GROUND ONE: _Discrimination As To Classifying The Plaintiff_ _To Lesser Restrictive Custody And Discrimination Because Of Crime_ _Committed._

2

3

III. Names and Address of Individual(s) You Allege violated your Constitutional Rights.

NAME                                    ADDRESS

1. Kathy Holt, Assistant Dir., P.O. Box 301501, 1400 Lloyd St. Montgomery AL 36130

2. Carolyn Colson ", ", P.O. Box 301601, 1400 Lloyd St. Montgomery, Al 36130

3. Debra Martin, Classification Specialist, 5375 Ingram Rd. Deatsville, Al 36022

4. William C. Segrest, Chairman, P.O. Box 302405, Montgomery, AL 36130

5. Carolyn Flack, P.O. Box 302405, Montgomery, Al 36130

6. Cynthia Dillard, P.O. Box 302405, Montgomery, AL 36130

7. Dr. Corber et. al Staton Medical Unit

8. Warden Thomas et al 5375 Ingram Rd Deatsville, Al 36022

9. Captain Horace Burton, 5375 Ingram Rd. Deatsville, Al 36022

10. Lt. Janet Hicks, 5375 Ingram Rd Deatsville, Al 36022

11. Lt. McCary, 5375 Ingram Rd, Deatsville, Al 36022

12. Lt. Lacey, 5375 Ingram Rd, Deatsville, Al 36022

13. Ex-Warden John Cummins II Bullock Corr. Facility

**STATE BRIEFLY THE FACTS WHICH SUPPORT THIS GROUND. (State as best you can the time, place and manner and person involved.)**

Since June 12th 2007, upon Arrival of the Plaintiff at F.L.G.C. This Plaintiff has been denied Parole, lessed Restrictive Custody, Discriminated in Job assignment and placement at other Institutions. All of which has been conspired by Ala. D.O.C. Personnel Kathy Hope, Carolyn Colson, Debra Martin et, Al, Denied Parole 4 time's since 2005. On Non-Violent Offense. Denied Adequate Medical Treatment. Yet has been charged numerous time's for the same Condition. Plaintiff is being held Hostage, at current Institution, as Retaliation for filing complaints, within the Ala. D.O.C. And Ala. State Courts. All of which has been a well-devised, Conspiracy to silence the Plaintiff. By Ala. D.O.C Personnel, to inflict Additional unwarranted punishment upon the Plaintiff for his Offense Against Society. By their personal opinion as to what penalty, This Plaintiff should pay society. All was done so as it wouldn't be defected, and if so treated as an oversight. or Department misstake. And it was all done by the named Personnel in this complaint. Along with the help of Other's, Not named. But whom should be investigated. This is a pattern of Practice that these defendants are expert's in. And is a violation of the Civil Right's Act of 1964. Detailed facts will be attached on the next page's. And nothing Short of U.S. Marsholn, or U.S. Dept of Justice Officials sent to investigate these incident's will correct these action's. Because it is being done not only to the Plaintiff but other Prisoner's as well.

3

5

STATE BRIEFLY THE FACTS which SUPPORT THIS GROUND. [STATE As best you can the time, place, and Manner and person involved.]

Plaintiff is being discriminated against, as to being classified according to Ala. Dept. of Corrections Regulations. Governing Classification for Lesser restrictive Custody. This Discriminatory incident has been initiated by Carolyn Golson. An Ala. D.O.C., Classification Assistant Director. She is responsible for Rendering the decision, to have a Restrictive Placement notification. Placed in the plaintiff Administrative file. The process by which it was Accomplished is totally discriminatory, and it also Constitute gross disparities toward the plaintiff. As to other inmates whom have been convicted of Move serious offenses. This Plaintiff was convicted of Criminal Mischief 1st And is being Confined, stricter than Murder's, Arsonist and Robber's. For some personal Reason, Assistant Director of Classification Carolyn Golson, has a personal interest in the plaintiff Case. And has proceeded to intentionally violate the Plaintiff's Constitutional Rights. By conspiring, and issuing order's, to Classification Specialist, to deprive the plaintiff of rehabilitation effort's. This was done because of Plaintiff Color, and statute in society. And is not part of the penalty, that Criminal Offender's pay for their offense's against society. This Abuse of Authority by Carolyn Golson has initiated a trail of discrimination, toward the plaintiff. Since it was issued June 8th 2006

Details:→
On March 28, 2006 the plaintiff filed a Classification Appeal of An Ala. D.O.C. classification CRB denial, of the plaintiff being placed in the Work-Release Program. Central Review Board (CRB) Reason for

6

THE denial stated continued Domestic Violence and Assultive Behavior. On May 08, 2006 Assistant Director of Classification for the Ala. D.O.C. Classification Division. She Granted the Appeal for the plaintiff to be placed in A Minimum Camp. At that present time the plaintiff was already in A Minimum Camp. Which was Loxley Work Camp. But Carolyn Gibson through her Conspiracy and discriminatory intent. Emphasized on the Appeal decision In an effort to cover-up an Classification Error. That the Plaintiff was Restricted from Lesser Restricted Custody. This was the decision instory decision Rendered

Under No Circumstances should Calvin A. Lee [Plaintiff] be assigned South of Montgomery [Restrictive Comments] Calvin A. Lee is extremely Violent in Female Relationships. Last conduct has been good. But is a Program Risk for Work-Release placement although He has been there before. [quote] Plaintiff Job assignment should not permit Contact with/females in Free Society

Plaintiff was at Loxley Work-Release. Mrs. Gibson had plaintiff Removed from that center. Because that center is south of Montgomery. And close to the plaintiff home town [Mobile, AL] under Ala. D.O.C. Regulation For classifying Convicts. Convicts are confined closer to home, so as not to create a hardship on them and Family members. During their period of confinement, as to visitation purposes. These decisions are discriminatory in every intent. And it has caused the plaintiff undue hardship When in Actual reality the plaintiff hasn't even been convicted by A Court of Law. For the crimes that the decision was based upon The Information That Classification used to render its decision is erroneous and not factual. They say that the plaintiff is in prison

For Assault, when the plaintiff is in prison for Criminal Mis-cheif 3rd. And for this charge, I have been treated as a HEINOUS Offender. While other Convicts that have taken Innocent citizen's Lives. Enjoy the priviliage's of working in the Community, without Supervision of Prison Guards. For which the plaintiff is also basing his Complaint. Being restricted from Placement in Work-Release, Institutional Squad Job's, Being restricted from around females in the institution. The purpose for this I don't understand, Since I had a few domestic dispute's. And any victim that I have ever harm-ed. We now have a great friendship; This is something that the Prison system could never do. The action's by Ala. D.O.C. Officals has Actually hindered the plaintiff, from Rehabilitating himself, This is the sole purpose of Convict's being given priviloges. This has been the case for the last 17 months that the plaintiff has been incarcerated at Frank Lee Youth Center—DEBRA MARTIN the Classification Specialist here at Frank Lee Youth Center. Has refused to recommend the plaintiff for any changes, Because of her fear of Senior Supervisor's This action Constitute discrimination, And has resulted in the plaintiff being held hostage rather then incarcerated. Plaintiff has made Num-erous Acheivements. And because of the Plaintiff challenging, the Opinions of Ala. D.O.C. Personnel. Plaintiff has been discriminated against by the parole Board of Ala. The Board has denied the plaintiff Parole Considerations [3] time's, since 2004. On a non-violent Crime. But while the Plaintiff is being discriminated against Several other inmates here at the same institution with far severe Crimes including Murder, Arson, Double Murder, Robbery 1st 1st Assault have gone on to less restrictive custody. Plaintiff has neither disfigured or impaired any of his victim's. Or Assaulted Police officer's

8

To name a few of the convicts whom have convictions where a human life. Has been lost as a result of their criminal activity. That have been allowed to work in the community unsupervised Jerry Seals #183471, Heywood Phillip #216977, Felton Matthews #160069. And their are numerous other's that the plaintiff can provide if the need be. This shows disparities. and is a violation of Equal protection Laws. The Ala. D.O.C. Classification Service official have abused their own policies. As to classifying convict's. And has done the plaintiff an injustice. This has been a pattern of practice. And since the plaintiff has challenged their authority as to their bias decisions. They have and will continue to retaliate against the plaintiff. Debra Marten, the Classification Specialist here at the Institution. Has discriminated against the plaintiff. by failing to perform her job description effectively. And failure to act in the face of known violations, of supervisory staff. Which has resulted in the plaintiff being discriminated against by essential Equality of opportunity in program's. Being denied equal access to available program's. Through Classification decision making process. Soley relying on information from Sources that reported incidents. from which the Plaintiff had never been convicted by a Court of Law.

The ALABAMA BOARD of PARDON AND PAROLES has discriminated against the Plaintiff. By exceeding it's Authority under Section 15-22-26 Ala Code of 1975. Board member's have treated the plaintiff ARBITRARILY AND CAPRICIOUSLY. And by violation of Plaintiff Due Process And Relying on information from a New Conviction and other. The Plaintiff is serving a Sentence of 15 year's. for a Probation Violation of a Criminal Mischief Conviction from August of 1996. Making the Plaintiff serve over a period of (7) year's on the Charge as of now.

9

Discrimination as well as violation's of the plaintiff EIGHTH Amendment Rights. has occurred, Since June 12th 2006, the entire Correctional Staff. AT. Frank Lee Youth Center has forced the plaintiff to be exposed to EXCESSIVE second hand smoke. And ENVIRONMENTAL Conditions that pose SERIOUS Risks to health and safety. The WARDEN as well as other Command Officer's have fail to obey Regulation's. That Frank Lee youth Center Dorm's and inside AREA's Are smoke-free. There has been no plan devised to deter smoking inside the building. And most of the time expecially at night. Convicts are not allowed outside to smoke. So they smoke inside forcing Non-smoker to be exposed, then Staff will not Approve of a Non-smoking dorm. Or either will they address the issue. This is A don't care Administration, It addresses petty issues At what is suppose to be an Honor Camp. There is A Severe Lack of Leadership present here. The Institution Cantwen sells tobacco products to Convict's. Who in turn RESELL these products to the Minor under Age Convicts. Who Are not legally of Age to purchase tobacco products. Staff member's and Correctional Officer's, are in the present of these MINOR's. Abusing themselves with these tobacco products, but fail to take any action. They Are un-professional in their job task. Plaintiff suffer's from Asmatha and other Respiratory problem's. But can't complain because it's no Authority to complain to. Plaintiff has numerous times been screened by the nurse, for Allergy problem's and often's related to this EXCESSIVE smoke. And since the Correctional Staff has endangered the plaintiff health. Plaintiff would like to file suit for monentary and Compensatory damages. To cover the Cost of past and present medical Cost. Incurred because of the failing exposure and intentionally infliction of pain, discomfort and risk of harm. As punishment for past conduct.

Plaintiff rights have been violated, where he is forced to be incarcerated at said Institution. That the numerous deficiencies that place the plaintiff health and safety at risk daily. Endangering the plaintiff as well as other convicts. There is no Trained Medical Personnel on the premises 24 hours. If serious emergency occurs the inmate has to be taken to another facility at least 15 minutes or better away. the Medical personnel has to come from another Institution. Plaintiff as well as other convicts, are treated as a Nuisance rather than a patient. Plaintiff as well as others has been Denied Access to health care staff Qualified to address Prisoner's problems. There is a Lack of drinkable water, Lee is exposed out Exposure to Toxic and noxious fumes from the Sewage lines are present. The ventilation is Inadequate in the dorm's. Plaintiff and Other Convicts are Constantly denied Access to Adequate toilets. The facility is Constantly Locked-down. Morning and Night, with 72 convicts left to use one toilet at night. And the outdoor bushes in the Morning. further creating a unhealthy and dangerous conditions. The Correctional Staff Constantly verbally abuses the convicts, Calling them Bitches and whores. There is no systematic program to receive Adequate mental screening without the Mental Health staff being instructed by prison officer as to Convicts conditions. The Correctional officers interfere with treatment. This Institution is a time bomb for the plaintiff and only breeds hate into the plaintiff and other Convicts. Plaintiff has been rehabilitated but not in the way society intended for him to be. Being in prison at Frank Lee Youth Center is simply not part of the penalty that criminals offenders pay for their offense against society. There has been a systematic failure of any Ala. D.O.C. Dept Director to make an Adequate professional Judgment, they only ignore the issues.

15

The Health Care Service provided, is incompetent to deal with prisoner needs. And every department conspires with each other to intentionally deprive the prisoner's of their Constitutional Rights. And each officer fail to Act in the face of known violations, of it's written policies and Regulations. Nothing short of sending Federal Marshals into this Institution will correct the problems. Plaintiff Request that the Court notify the U.S. Justice Department. So that he and other prisoner's can file an Complaint And that the Justice Department Investigate the Pattern & Practice of Prisoner Discrimination. Plaintiff Request that the Court Allow him to Amend to this Complaint at a later date. Also that the Court Issue A Writ of Mandamus Compelling the Ala. D.O.C. to not retaliate against the Plaintiff as to filing this complaint. Also issue A Writ of Mandamus ordering the Ala. D.O.C. Classification Division to transfer plaintiff to another Institution. The Plaintiff is mentally and physically exhausted from being incarcerated under stressful conditions. When there is no purpose for this cause. But to intentionally inflict torments upon prisoner's [Exhibit's are attached] as proof of Discrimination. The Accused were, suppose to be doing their Job's. But are instead lying to the plaintiff. Which was retaliation because of prior complaints, that the plaintiff had filed. The Ala. Dept of Care has overlooked the plaintiff in every aspect.

12

VI.   STATE BRIEFLY EXACTLY WHAT YOU WANT THE COURT TO DO FOR YOU.
MAKE NO LEGAL ARGUMENT.   CITE NO CASES OR STATUTES.

for Corrective Action to be taken immediately, Make sure this
Never occur's again. Also that the plaintiff be transferred to
another Institution, If it has to be back to Receiving at Kilby
And Monetary and Compensatory Damages be awarded.

_____
Signature of plaintiff(s)

     I declare under penalty of perjury that the foregoing is true
and correct.

     EXECUTED on  10/23/07  .
                    (Date)

_____
Signature of plaintiff(s)

4

13



14

**INMATE REQUEST SLIP**

ne _Calvin A. Lee_    Quarters _A21A_   Date _10/00/07_

AIS # _152056_

( ) Telephone Call      ( ) Custody Change      ( ) Personal Problem

( ) Special Visit       ( ) Time Sheet          ( ✓ ) Other _____

Briefly Outline Your Request - Then Drop In Mail Box

BUSINESS MANAGER - Could you please inform me
as to how many Medical · Co-Payment I now owe
The HealthCare Dept Reason I am Requesting this in-
formation is because. I never Received a bill from them
after my visits. And I thought that some of the visit
were Follow-ups. And I was under Chronic Care condition
I need some documentation for verification, so I can
know what I am being charged for.

Not Write Below This Line - For Reply Only

10/4/07

Healthcare doesn't send you a bill, once you
sign in when you visit the healthcare
that's how you are charged for a visit.
                        Mrs. Hollenquist

| Approved | Denied | Pay Phone | Collect Call |
|---|---|---|---|

Request Directed To: (Check One)

( ) Warden                  ( ) Deputy Warden       ( ) Captain

( ) Classification Supervisor   ( ) Legal Officer · Notary   ( ) Record Office
                                 Public

176

ne _Calvin A. Lee_          Quarters _A218_  Date _10/08/02_

AIS # _152056_

( ) Telephone Call      ( ) Custody Change      ( ) Personal Problem

( ) Special Visit       ( ) Time Sheet          (✓) Other _____

efly Outline Your Request - Then Drop In Mail Box

_Mrs. Hollerquest: In Reference To the inmate Request
I sent you on 10/08/02. Could you give me a print-out
on some form of Documentation as to how many health
care visit. I owe the Healthcare Dept. for and how
much. The Dates of these visit. Because I was under the
Cthronic-care status most of these visits. Anyway if you
could help me here, that will do._

                              _Thank you!_

) Not Write Below This Line - For Reply Only

_Yes You receipt is your signature when
you sign in for sick call. You
can recieve a receipt once you pay
your medical visits._

                _Mrs Hollerquest_

Approved          Denied          Pay Phone          Collect Call

equest Directed To: (Check One)

) Warden                    ( ) Deputy Warden        ( ) Captain

) Classification Supervisor  ( ) Legal Officer - Notary  ( ) Record Office
                                  Public

176

16

```
                          ALABAMA DEPARTMENT OF CORRECTIONS        INST:    012
                          INMATE SUMMARY AS OF 05/23/2007          CODE: CRSUM
CB3716-3

*****************************************************************************

AIS: 00152056A   INMATE: LEE, CALVIN ALPHONSE         RACE: B   SEX: M

INST: 012 - FRANK LEE YOUTH CENTER         DORM:   00   JAIL CR: 003Y 08M 100

DOB: 05/16/1956   SSN: 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                    PREVIOUS AIS: P0044382

ALIAS: LEE, C AL3HONZA

ADM DT: 03/04/1997 DEAD TIME: 000Y 00M 000

ADM TYP: NEW COMMITMENT - SPLIT SENTENC      STAT: SPLIT SENTENCE - REVOKED

CURRENT CUST: MIN-2   CURRENT CUST DT: 02/28/2006  PAROLE REVIEW DATE: - NONE -

SECURITY LEVEL: (2) TWO

SERVING UNDER ACT446 LAW IN CLASS I          CURRENT CLASS DATE:   11/01/2004
INMATE IS EARNING : EARNS 75 DAYS FOR EACH 30 SERVED

COUNTY      SENT DT  CASE NO  CRIME                    JL-CR      TERM
MOBILE      11/01/04 N95304044 CRIMINAL MISCHIEF I     1345D 015Y 00M 000 CS

  TOTAL TERM      MIN REL DT      GOOD TIME BAL     GOOD TIME REV     LONG DATE
015Y 00M 000     01/24/2008      000Y 04M 250      000Y 00M 000      02/23/2016

INMATE LITERAL:
*****************************************************************************

DETAINER WARRANTS SUMMARY
    INMATE CURRENTLY HAS NO DETAINER WARRANT RECORDS
*****************************************************************************

ESCAPEE-PAROLE SUMMARY

    INMATE CURRENTLY HAS NO PAROLE RECORDS

    INMATE HAS NO ESCAPES FROM ADOC SINCE OBSCIS RECORDING B
*****************************************************************************

DISCIPLINARY/CITATION SUMMARY

    >> CITATION: 05/19/1999                      CUST FROM MIN5 TO MIN5
       CITATION TYPE: BEHAVIOR CITATION      AT INST: 057   RULE NUMBER: 56
    RETAINED DAYS: 0000   SEQ #: 01   RULE LIT: FAIL TO OBEY A DIRECT ORDER OF DO
```

17

Bullock

March 2006
RECEIVED

18

## SOCIAL SERVICE ACTION

NAME _Lee, Calvin_ AIS _132058-A_                          R & S _BM_

INSTITUTION _____ CUSTODY _____

ACTION: Rescind: _____

Amend: _____

Transfer: From: _Alex Loxley CWC_ To: _Alex J.F.J_

Custody: From: _____ To: _____

REASON(S)

The above inmate was transferred to
Loxley CWC on 5-12-06 from Bullock
Corr. Center.

The appeal form specifically stated that
he was not to be assigned to a facility.
This was due in part to the nature of his
offense.

Inmate should never have been assigned
to Loxley CWC.

ATE: _6-8-06_                          APPROVED: _J. Odom_

258

19

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
BULLOCK COUNTY CORRECTIONAL FACILITY
P.O. BOX 5107
UNION SPRINGS, AL 36089



Classification Appeal Form

NAME: _Calvin Alphonse Lee_    AIS# _152056A_    INSTITUTION _Bullock_

DATE: _03 28 2006_

I.   CLEARLY STATE THE DECISION THAT IS BEING APPEALED: _The Denial of_
_Placement at Mobile Work-Release, Because of Continued D.V. And Assault-_
_ive Behavior_

II.   BRIEFLY AND CLEARLY STATE YOUR REASONS FOR APPEALING: _____

_[ See ( Attached Paper's ]_

_Cal A Lee_
INMATE SIGNATURE

**************************************************************

III.   COMMENTS OF WARDEN/CLASSIFICATION PERSONNEL: _PR is attached_
_it was submitted at Kilby._

WARDEN SIGNATURE/DATE _3/28/06_        CLASSIFICATION SIGNATURE/DATE _3-28-06_

************************************************************** DO NOT WRITE BELOW THIS LINE

APPEAL GRANTED: _Min Camp_        DENIED: _____

DATE: _5 3 06_

COMMENTS: _Extremely violent in female relationship_
_Inst. conduct has been good - Program risk_
_for work release placement although he has been_
_there before - Job assignment should not permit_
_contact w/ females in free situation._

20

ALABAMA DEPARTMENT OF CORRECTIONS - PROGRESS REVIEW FORM - JANUARY    4, 2007
(COU122)

AIS #: 00152056A    SSN: 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    RACE/SEX:  B/M    DATE OF BIRTH: 05/16/1956
NAME: LEE, CALVIN ALPHONSE            CUSTODY:   MIN2   SECURITY LEVEL: 2
INST: FRANK LEE YOUTH CENTER          TIME SRVD:  05Y10M10 LAST DISC: 05 19 1999
CRME: CRIMINAL MISCHIEF I             MIN REL DT: 01/24/2008 ACTIVE DET:  0

DISC: FAIL TO OBEY A DIRECT ORDER OF PRL CONS:   04/01/2007 EDUCAT LEV: 12

WL/PGM: _BATH_____        PRIM OCCUP:JANITOR

RECOMMENDED INSTITUTION:  _FLYC_____        RECOMMENDED CUSTODY: _MIN_

JUSTIFICATION: _Lee is barred consideration of lesser restrictive custody due due to excessive violence._

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED:                    APP. S/L:____

_____  1-5-07          _____  1-5-07
CLASSIFICATION SPECIALIST    DATE       WARDEN OR DESIGNEE    DATE

PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.   DATE        CLASSIFICATION COORDINATOR DATE

CENTRAL REVIEW BOARD ACTION

___ APPROVED ___ DENIED; DIVERTED TO: _____   REASONS: _____

                                                CRB MEMBER              DATE
___ APPROVED ___ DENIED; DIVERTED TO: _____   REASONS: _____

                                                CRB MEMBER              DATE
___ APPROVED ___ DENIED; DIVERTED TO: _____   REASONS: _____

                                                CRB MEMBER              DATE

FINAL DECISION: INST _FLYC_ CUSTODY _MIN_ DATE _1-5-07_

DATE INMATE INFORMED: _1-5-07_ INMATE'S SIGNATURE: X_____

21

# INMATE REQUEST SLIP

Name Calvin Alphonse    LCF Quarters R213    Date 6/29/07

AIS # 153056

( ) Telephone Call    ( ) Custody Change    ( ) Personal Problem
( ) Special Visit    ( ) Time Sheet    ( ) Other

Briefly Outline Your Request - Then Drop In Mail Box

Mrs. Martin - When the D.O.C. start drug test these guys here in the Dorm. Would you Put me in the one I would like to transfer to Decatur C.S.F.

Not Write Below This Line - For Reply Only

FYI 1/08

wms. Martin 7/5/07

Approved    Denied    Pay Phone    Collect Call

Request Directed To: (Check One)

( ) Warden    ( ) Deputy Warden    ( ) Captain
( ) Classification Supervisor    ( ) Legal Officer - Notary    ( ) Record Office
                                       Public

76

22



### STATE OF ALABAMA
### DEPARTMENT OF CORRECTIONS
### FRANK LEE YOUTH CENTER

P.O. Box 220410
Deatsville, Alabama 36022

Telephone (334)285-5591

July 18, 2007

MEMORANDUM:

TO      Calvin Lee, B/M#152056A

FROM: Debra Martin, Classification

REF:    Semi-Annual Review

You have been reviewed for you semi-annual review. I am not recommending any changes at this time due to you are barred work release based upon a ruling by CRB on a previous review. I have submitted a transfer request to CRB for lateral transfer as you requested.
You will be reviewed again at your annual review in January 2008.


cc: inmate file

23



**BOB RILEY**
**GOVERNOR**

*State of Alabama*
*Alabama Department of Corrections*
Frank Lee Youth Center
P. O. Box 220410
Deatsville, Alabama 36022



**RICHARD F.**
**ALLEN**

August 27, 2007

FROM:   Debra Martin, Classification Specialist

TO:     Lee, Calvin Alphonse      B/M    152056A

REF:    Supervised Re-Entry Program

The purpose of this letter is to advise you that your application has been submitted for
acceptance into the Supervised Re-Entry Program. You will be notified when a decision has
been made regarding your acceptance. If you are denied acceptance into the Supervised Re-
Entry Program you will automatically be considered for work release placement on the same
application. This notice will serve as an annual Classification review.

24

STATE OF ALABAMA
BOARD OF PARDONS AND PAROLES
301 S. RIPLEY STREET
P.O. BOX 302405
MONTGOMERY, ALABAMA  36130 - 2405
CENTRAL OFFICE

01-19-2007

CALVIN ALPHONSE LEE
152056
FRANK LEE YOUTH CENTER
P O BOX 220410
DEATSVILLE AL  36022

DEAR MR LEE

THE BOARD OF PARDONS AND PAROLES WILL CONSIDER YOU FOR PAROLE IN
AN OPEN PUBLIC MEETING AT 301 S. RIPLEY ST, MONTGOMERY, ALABAMA
ON 03-28-2007.NUMBERED SIGN-IN SHEETS ARE AVAILABLE WHEN THE
DOOR OPENS AT 7:30 A.M.   SIGN-IN SHEETS WILL BE COLLECTED IN
THE WAITING ROOM BEGINNING AT 7:30 A.M.   BEGINNING AT 9:00 A.M
CASES WILL BE HEARD IN ORDER OF REGISTRATION UNLESS SPECIAL
CIRCUMSTANCES EXIST. BOARD DECISIONS WILL BE RELEASED UPON
COMPLETION OF THE HEARING TO THOSE PRESENT, AND WILL BE AVAILABLE
BY TELEPHONE THE FOLLOWING FRIDAY AFTERNOON.
FRIDAY AFTERNOON.


AMERICAN DISABILITIES ACT ASSISTANCE (334)353-8067

25

STATE OF ALABAMA
BOARD OF PARDONS AND PAROLES
301 S. RIPLEY STREET
P.O. BOX 302405
MONTGOMERY, ALABAMA  36130 - 2405
CENTRAL OFFICE (334) 242 - 8700
03-30-2007


CALVIN ALPHONSE LEE
152056
FRANK LEE YOUTH CENTER
P O BOX 220410
DEATSVILLE AL  36022


YOUR CASE WAS REVIEWED BY THE BOARD OF PARDONS AND PAROLES AT
AN OPEN PUBLIC MEETING.  YOU WERE DENIED PAROLE AND RESET FOR
FURTHER CONSIDERATION DURING THE MONTH OF NONE.


REMARKS:
THE BOARD HOPES YOU WILL COOPERATE WITH THE PRISON AUTHORITIES
IN ORDER THAT YOU MAY RECEIVE THE BEST BENEFITS THAT CAN BE
ACCORDED.

YOURS VERY TRULY,

CYNTHIA S. DILLARD
ACTING EXECUTIVE DIRECTOR


WCS/CRM

CC:  WARDEN
     CLASSIFICATION

26

STATE OF ALABAMA
BOARD OF PARDONS AND PAROLES
301 S. RIPLEY STREET
P.O. BOX 302405
MONTGOMERY, ALABAMA  36130 - 2405
CENTRAL OFFICE (334) 242 - 8700
04-20-2006


CALVIN ALPHONSE LEE
152056
BULLOCK CORRECTIONAL FACI
P O BOX 5107
UNION SPRINGS  AL  36089


YOUR CASE WAS REVIEWED BY THE BOARD OF PARDONS AND PAROLES AT
AN OPEN PUBLIC MEETING.  YOU WERE DENIED PAROLE AND RESET FOR
FURTHER CONSIDERATION DURING THE MONTH OF 04/2007.


REMARKS:
THE BOARD HOPES YOU WILL COOPERATE WITH THE PRISON AUTHORITIES
IN ORDER THAT YOU MAY RECEIVE THE BEST BENEFITS THAT CAN BE
ACCORDED.


                              YOURS VERY TRULY,




                              WILLIAM C. SEGREST
                              EXECUTIVE DIRECTOR

WCS/CRM

CC:  WARDEN
     CLASSIFICATION

27

Prison Health Services, Inc.

## Inmate Grievance

Calvin Alphouse    Loc 152056    J.L.C.    05/08/07
NAME                AIS #         UNIT      DATE

**PART A – Inmate Grievance**

I have a severe sinus and allergy problem, the treatment I am now receiving for it does no good. My equal liberty of balence, is off. I am very nausiaed and feel very weak. My eyes are raw from rubbing and I need some eye drops AntiHistamine and redness reliever, I stay dizzy and have to stay laying down I am serious about this matter, and I am requesting adequate attention to it. I have passes out due to this problem in the pass I am requesting that I be sent to a specialist so that I can relieve and injection and proper diagnosis. I can't continue to suffer like this. Also my sinuses are badly infected. I have seen the nurse and doctor several times. I need proper paper work here to lay-in because of this condition.

Calvin Lee
INMATE SIGNATURE

**PART B – RESPONSE**    DATE RECEIVED _____

Medical record referred
to provider on 5/11/07

M. Daily HSA
P.H.S. Department Head Signature

5/11/07
DATE

If you wish to appeal this review you may request a <u>Grievance Appeal</u> form from the Health Services Administrator. Return the completed form to the attention of the; Health Service Administrator. You may place the form in the sick call request box or give it to the segregation sick call nurse on rounds.

**H.S.A. Selection:**

| | Y | N | | Y | N |
|---|---|---|---|---|---|
| I    Dissatisfied with Quality of Medical Care | ☐ | ☐ | VI  Delay in Health Care Provided | ☐ | ☐ |
| II   Dissatisfied with Quality of Dental Care | ☐ | ☐ | VII  Problems with Medication | ☐ | ☐ |
| III  Dissatisfied with Quality of Mental Health Care | ☐ | ☐ | VIII Request to be seen | ☐ | ☐ |
| IV   Dissatisfied with Response to Non-Medical Request | ☐ | ☐ | IX  Request for Off-site Specialty Care | ☐ | ☐ |
| V    Conduct of Healthcare Staff | ☐ | ☐ | X  Other | ☐ | ☐ |

Committee Review of Data Collection

11/03 – Alabama
Revised 5/16/05

60534-AL

White-Administration Copy    Yellow-Response Copy    Pink-Notary Copy

28

Prison Health Services, Inc.

## Inmate Grievance

Calvin Alphonse Lee  152056          7.L.4.C          06/12/07
NAME                    AIS #                    UNIT                DATE

**PART A – Inmate Grievance**
Need KOP Medication's - Aspirin EC, Simvastin, Motoprozol
Tar Tar TB, Lisinopril Hydrochlorothiazide, Quad inheler,
Abbotco inhelers, Tegio Tabs, Knee Brace, Nasal Spray,
Eye Glasses. Some of these prescribed item's I have been waiting
on for over 90 days Such as Knee Brace X-large, Eyes Glasses.

Also I have a severe allergy Problem, And it caused my
Equal Liberaly to be off. At times and I need an emergency
and some physiles to log-in when I am under these systems

_____
INMATE SIGNATURE

**PART B – RESPONSE**          DATE RECEIVED _____
Lisinopril 10mg + Zantac are both
available @ Pill call window. your
other medications were ordered
6/13/07.
you need to put in a sick call
request for your allergy problem

_____ HSA
P.H.S. Department Head/Signature
6/13/07
_____
DATE

If you wish to appeal this review you may request a Grievance Appeal form from the Health
Services Administrator. Return the completed form to the attention of the; Health Service
Administrator. You may place the form in the sick call request box or give it to the segregation
sick call nurse on rounds.

**H.S.A. Selection:**

| | Y | N | | | Y | N |
|---|---|---|---|---|---|---|
| I   Dissatisfied with Quality of Medical Care | ☐ | ☐ | VI  Delay in Health Care Provided | | ☐ | ☐ |
| II  Dissatisfied with Quality of Dental Care | ☐ | ☐ | VII  Problems with Medication | | ☐ | ☐ |
| III  Dissatisfied with Quality of Mental Health Care | ☐ | ☐ | VIII Request to be seen | | ☐ | ☐ |
| IV  Dissatisfied with Response to Non-Medical Request | ☐ | ☐ | IX  Request for Off-site Specialty Care | | ☐ | ☐ |
| V   Conduct of Healthcare Staff | ☐ | ☐ | X   Other | | ☐ | ☐ |

Committee Review of Data Collection

11/03 – Alabama
Revised 5/16/05

29

**Prison Health Services, Inc.**

## Inmate Grievance

Calven ALPHonsE Lee   152056          $L.4.C.          06-19-07
NAME                  AIS #                UNIT           DATE

---

**PART A – Inmate Grievance**

Again today Sinus ans soverrally infected, either nussd to see Medical Specialist ARE I am in need of an injection tre. of this Problem. In the past I have passed-out for this problem if not treated properly. I am barely able to stay councious. My body equal liberty is off. I can't function. I am in sore need of professional medical treatment of which I am being denied. This experimental treatment is not sufficient would you please grant me access to Qualified Medical Personnel in this area. I am very ill from this Problem. I can barally get out of bed some days. This Problem's comes and goes. I am in need of professional medical treatment Immediately.

Calven g. Lee
**INMATE SIGNATURE**

---

**PART B – RESPONSE**      rec'vd         **DATE RECEIVED**

Medical referred to provider for review on 6/22/07

M. Dug. HSA
**P.H.S. Department Head Signature**

6/22/07
**DATE**

---

**If you wish to appeal this review you may request a <u>Grievance Appeal</u> form from the Health Services Administrator. Return the completed form to the attention of the; Health Service Administrator. You may place the form in the sick call request box or give it to the segregation sick call nurse on rounds.**

| H.S.A. Selection: | Y | N | | Y | N |
|---|---|---|---|---|---|
| I    Dissatisfied with Quality of Medical Care | ☐ | ☐ | VI   Delay in Health Care Provided | ☐ | ☐ |
| II   Dissatisfied with Quality of Dental Care | ☐ | ☐ | VII  Problems with Medication | ☐ | ☐ |
| III  Dissatisfied with Quality of Mental Health Care | ☐ | ☐ | VIII Request to be seen | ☐ | ☐ |
| IV  Dissatisfied with Response to Non-Medical Request | ☐ | ☐ | IX   Request for Off-site Specialty Care | ☐ | ☐ |
| V   Conduct of Healthcare Staff | ☐ | ☐ | X    Other | ☐ | ☐ |

**Committee Review of Data Collection**

11/03 – Alabama
Revised 5/16/05

IN THE UNITED STATES DISCRICT COURT
OF THE MIDDLE DISTRICT
OF ALABAMA

Calvin Alphonse Lee, AIS #152056A )
    Plaintiff )
     )
    vs. )    CASE NO. CV-2:07-CV-973-MEF
     )
Alabama Department of Corrections, et al., )
    Defendant )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared one Kathy Holt, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Kathy Holt. I am presently employed by the State of Alabama, Department of Corrections, as Correctional Records Director, 301 South Ripley Street, Montgomery, Alabama 36104.

This is to certify that as Director of the Central Records Division, I have no authority over the custody, classification of inmates, transfer or location assignment of inmates. Additionally, I have not authority over the parole review date or approval for parole of inmates. Therefore, I deny that I have violated petitioner's rights.

                                                 KATHY HOLT
                                          Director of Records

SWORN TO AND SUBSCRIBED BEFORE ME
THIS THE 21ST DAY OF DECEMBER 2007

KIMBERLY WHITNEY, NOTARY PUBLIC
    State of Alabama at Large
    My Commission Expires October 27, 2009

cc:   ICRF                        TO:   Jeff Long, Attorney General's Office

EXHIBIT
9
PENGAD 800-631-6989

```
                      ALABAMA DEPARTMENT OF CORRECTIONS
CPTFR  1              INMATE SUMMARY AS OF 12/21/2007        CODE: CPTFR


*********************************************************************************

AIS: 00152056A   INMATE: LEE, CALVIN ALPHONSE           RACE: B  SEX: M

INST: 004 - DRAPER CORRECTIONAL CENTER      DORM:  00  JAIL CR: 003Y 08M 10D

DOB: 05/16/1956  SSN: 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                 PREVIOUS AIS: P0044382

ALIAS: LEE, C ALPHONZA

ADM DT: 03/04/1997 DEAD TIME: 000Y 00M 00D

ADM TYP: NEW COMMITMENT - SPLIT SENTENC     STAT: SPLIT SENTENCE - REVOKED

CURRENT CUST: MIN-2   CURRENT CUST DT: 02/28/2006  PAROLE REVIEW DATE: - NONE -

SECURITY LEVEL: (2) TWO

SERVING UNDER ACT446 LAW IN CLASS I        CURRENT CLASS DATE:  11/01/2004
INMATE IS EARNING : EARNS 75 DAYS FOR EACH 30 SERVED

COUNTY       SENT DT  CASE NO   CRIME                 JL-CR    TERM
MOBILE       11/01/04 N96004044 CRIMINAL MISCHIEF I   1345D 015Y 00M 00D CS

 TOTAL TERM       MIN REL DT      GOOD TIME BAL     GOOD TIME REV     LONG DATE
 015Y 00M 00D     01/24/2008      007Y 10M 05D      000Y 00M 00D      02/20/2016

INMATE LITERAL:
*********************************************************************************

DETAINER WARRANTS SUMMARY
    INMATE CURRENTLY HAS NO DETAINER WARRANT RECORDS
*********************************************************************************

ESCAPEE-PAROLE SUMMARY

    INMATE CURRENTLY HAS NO PAROLE RECORDS

    INMATE HAS NO ESCAPES FROM ALABAMA D.O.C.
    SINCE O.B.S.C.I.S. RECORDING BEGAN IN 1978
*********************************************************************************

DISCIPLINARY/CITATION SUMMARY

  >> DISCIPLINE: 12/04/2007  TIME LOST: 00Y00M00D   CUST FROM MIN2 TO MIN2
     DISCIPLINE TYPE: MAJOR                 AT INST: 012    RULE NUMBER: 53
     RETAINED DAYS: 0000   SEQ #: 02   RULE LIT: INCITING TO RIOT OR RIOTING

     >> CITATION: 05/19/1999                CUST FROM MIN5 TO MIN5
        CITATION TYPE: BEHAVIOR CITATION    AT INST: 057    RULE NUMBER: 56
     RETAINED DAYS: 0000   SEQ #: 01   RULE LIT: FAIL TO OBEY A DIRECT ORDER OF DO




                          CONTINUED ON NEXT PAGE
```

```
                          ALABAMA DEPARTMENT OF CORRECTIONS
CPTFR  1                  INMATE SUMMARY AS OF 12/21/2007              CODE: CPTFR

****************************     CONTINUATION     ****************************

AIS: 00152056A    INMATE: LEE, CALVIN ALPHONSE              RACE: B  SEX: M

****************************************************************************

ENEMY SUMMARY

00172528    RAYFORD, LONNIE JR           BM 05/08/1967    LIMESTONE SPECIAL UNIT
```